**William G. ROWELL, Appellant,**

v.

**Anthony J. PRINCIPI, Acting Secretary of Veterans Affairs, Appellee.**

No. 91–1052.

United States Court of Veterans Appeals.

Jan. 6, 1993.

As amended Feb. 9, 1993.

William G. Rowell, pro se.

James A. Endicott, Jr., Gen. Counsel, David T. Landers, Acting Asst. Gen. Counsel, Pamela L. Wood, Deputy Asst. Gen. Counsel, and Michael R. Smalls, Washington, DC, were on the brief for appellee.

Before NEBEKER, Chief Judge, and FARLEY and STEINBERG, Associate Judges.

STEINBERG, Associate Judge:

The appellant, veteran William G. Rowell, appeals a March 12, 1991, Board of Veterans' Appeals (BVA or Board) decision denying service connection for bilateral hearing loss. *William G. Rowell*, BVA 91–07878 (Mar. 12, 1991). The Court will vacate the BVA decision and remand the case to the Board for proceedings consistent with this opinion.

## I. BACKGROUND

The veteran served in the United States Navy from July 21, 1950, to May 12, 1954. R. at 1. His report of separation indicates that his "MOST SIGNIFICANT DUTY ASSIGNMENT" was with a flight squadron. R. at 1. At induction, his ears were reported to be "normal" and his hearing was reported as "15/15", bilaterally. R. at 23. On July 27, 1950 (one week after entering service), he was treated for pneumonia and various complaints, including earache. R. at 25. Examination of his ears at that time was negative. *Ibid.* His remaining service medical records contain no complaints or treatment relating to his ears or hearing. R. at 27–54. At his separation examination, his ears were reported as normal and his hearing was again measured at 15/15, bilaterally. R. at 48–49.

On April 25, 1988, the veteran filed a claim with a Regional Office (RO) of the Veterans' Administration (now Department of Veterans Affairs) (VA) for service connection for hearing loss. R. at 2–5. In support of his claim, he submitted, inter alia, a sworn statement from his ex-wife, who is a physician (an anesthesiologist, apparently) stating that she had met the veteran in 1962; that he had at that time and ever since had a chronic ear problem involving infection and drainage; that at that time (1962) she had learned that the veter-

an had been seeing Dr. Harold Alper for treatment; and that Dr. Alper had diagnosed the problem as nerve deafness, not then correctable by surgery. R. at 6. The VA requested medical records from Dr. Alper. R. at 7. The records received from Dr. Alper, which are largely illegible due to poor reproduction, indicate that he had treated the veteran from 1961 through 1970 for hearing loss. R. at 8–15. In a June 1968 notation, Dr. Alper apparently noted that the veteran had been exposed to noise from jets during the Korean War. R. at 12. These reports indicate a diagnosis of sensorineural hearing loss and recurrent external otitis. R. at 12.

In June 1988, the VA requested from the National Personnel Records Center (NPRC) "all" of the veteran's service medical records. R. at 18. The NPRC returned the request form, noting that it had enclosed all of the veteran's requested records. R. at 18. (See R. at 20–53.) In a July 21, 1988, decision, the RO denied the claim, noting that on examination at separation the ears were reported to have been within normal limits. R. at 55. VA documents dated in June 1988 indicate that the VA had scheduled the veteran for an audiometric examination in 1988 but that such examination was canceled. R. at 57–58.

In an August 3, 1988, letter, the RO informed the veteran of the denial of his claim. R. at 61. The veteran thereafter filed a Notice of Disagreement (NOD) dated August 3, 1989, and stamped as "Received" by the RO on August 7, 1989. R. at 65. He also submitted lay statements from three persons, each stating that the veteran had not had ear problems prior to service but had had serious ear problems after his service. R. at 62–64. On August 13, 1989, the RO again denied the claim. R. at 67. In an August 24, 1989, letter to the veteran enclosing a Statement of the Case (SOC) (R. at 68–72), VA treated the veteran's August 7, 1989, NOD as valid (as evidenced by its issuance of an SOC, dated August 24, 1989, and its statement in the letter that his NOD had been filed and that he was required to file "a VA Form 1–9" ("Appeal to the BVA") to proceed with his appeal. R. at 68).

The veteran subsequently requested and received at least three 60–day extensions of time to file the Form 1–9. R. at 73–75, 77, 80. In granting the last of these extensions, a March 29, 1990, RO letter stated: "We will be glad to grant you an extension of time until June 1, 1990. As we advised you in our previous letter, you must complete your appeal if you intend to complete it before August 1, 1990." R. at 80. He then submitted three additional lay statements (R. at 76, 78, 82), each stating that the veteran had not had ear problems prior to service but did have them (apparently shortly) after his service (one, from a sister, said "immediately" (R. at 78); another sister said that after his discharge he was "bothered constantly with ear problems" (R. at 76) ).

In a March 19, 1990, Statement in Support of Claim, he requested a hearing. R. at 79. On June 5, 1990, he appeared at a hearing at the RO and testified under oath that he had developed a hearing problem in the Navy in 1953 due to his constant exposure to jet aircraft noise for three years (R. at 84); that he had received treatment for his ear problems in 1953 aboard the U.S.S. Boxer while stationed in the Sea of Japan (R. at 84–85); that he had received treatment for that condition up until his discharge (R. at 85–86); that he had received treatment from private physicians within one week after his separation from service and regularly thereafter (R. at 86–89); that his hearing problems had continued and worsened since service (R. at 86–89); and that his service medical records appeared to be incomplete because they did not reflect several instances when he had received treatment for hearing problems and other conditions during service (R. at 90–91). At the hearing, the VA hearing officer stated that he had discussed the Form 1–9 with the veteran's representative and that the representative had requested that the appeal be left open to allow the Form 1–9 to be submitted at a later date. R. at 83.

In a June 28, 1990, decision, the hearing officer denied the claim. R. at 99. On July 25, 1990, the veteran filed what he stated

was an NOD with an RO rating "decision dated 18 July 1990". R. at 100. Written on that purported NOD (by someone other than the veteran—presumably VA personnel) is the notation "IN LIEU OF 1–9". R. at 100. In an August 7, 1990, decision, the RO denied service connection and indicated that the veteran had filed a "reopened claim" on March 20, 1990. R. at 101. On August 17, 1990, the RO issued a Supplemental SOC, listing the date of the original SOC as August 24, 1989, and again stating that the veteran had submitted a "reopened claim" on March 20, 1990. R. at 103–04.

In an October 15, 1990, Statement in Support of Claim, the veteran requested that VA "make a more diligent search for my medical records". R. at 107. On October 25, 1990, the RO informed him that his appeal was being certified to the BVA. R. at 110. In a statement dated November 7, 1990, the veteran requested that the RO arrange for an audiological examination. R. at 111.

In its March 12, 1991, decision on appeal to this Court, the BVA stated, under "ITEMS RELATING TO PRESENT APPELLATE STATUS":

> Although the veteran's [NOD] was not filed within the applicable one-year period from the date of notification of the denied claim, it appears that the originating agency has proceeded with a de novo review of the veteran's claim. The Board of Veterans [sic] Appeals will likewise determine the veteran's claim on a de novo basis.

*Rowell*, BVA 91–07878, at 2. The Board then concluded:

> Since the veteran's hearing was found to be normal on the service separation examination and the post[-]service medical evidence of record does not document the presence of hearing loss until many years following the veteran's discharge from service, we must conclude that the hearing loss is not attributable to any noise exposure that the veteran might have been subjected to during service. While we have carefully considered the veteran's statements and those submitted in support of his claim, we do not find them to provide a persuasive basis

for a grant of service connection for bilateral hearing loss, in light of the entire evidentiary record.

*Id.* at 4.

## II. ANALYSIS

### A. *Validity of NOD*

**i. Law and Regulation:** Because the Court concludes in part E, below, that the Board made prejudicial errors in its 1990 decision that would require remand of the case for readjudication, it is necessary to determine whether the instant appeal presents a reopened claim or is an appeal from adjudication of the hearing-loss claim the veteran initially filed on April 23, 1988. If the latter, then the veteran would be eligible for an effective date for any award of service connection as of the date of his April 1988 application. 38 U.S.C. § 5110(a) (formerly § 3010); 38 C.F.R. § 3.400(b)(2) (1991). If the claim on appeal is a reopened claim and was properly reopened on the basis of new and material evidence under 38 U.S.C. § 5108 (formerly § 3008), then the effective date of any award could be no earlier than the date of the reopened claim. 38 U.S.C. § 5110(a); 38 C.F.R. § 3.400(q)(1)(ii) (1991).

Hence, the initial question is whether the BVA, notwithstanding its conclusion that the veteran did not file a timely NOD, had jurisdiction to adjudicate the claim de novo merely on the basis that the RO had adjudicated the claim de novo. For the following reasons, we hold that the Board had no such jurisdiction.

 Section 7105(a) (formerly § 4005) of title 38, U.S.Code, provides: "Appellate review [by the BVA] will be initiated by [an NOD] and completed by a substantive appeal [VA Form 1–9] after [an SOC] is furnished...." Under subsections (b) and (c) of section 7105, if an NOD is not filed by a claimant or an authorized representative within one year after the date of mailing to the claimant of notice of the RO decision, then the claim will become final and may not thereafter be reopened or allowed "except as may otherwise be provided by regulations not inconsistent with this title." In

38 C.F.R. § 3.109(b) (1991), the Secretary of Veterans Affairs (Secretary) has prescribed such a regulation, permitting extensions of the time limit for doing any act "required to perfect a claim or challenge an adverse VA decision". Section 3.109(b) states that such an extension must be "requested" and that "good cause must be shown". No other VA regulation allows extensions of time for filing an NOD.

Section 7105(b)(1) further requires that the NOD be filed "within one year from the date of mailing of notice of the result of initial review or determination" and provides: "A notice of disagreement postmarked before the expiration of the one-year period will be accepted as timely filed." The computation of the time limit is further clarified in 38 C.F.R. § 3.110 (1991), which provides in part:

(a) In computing the time limit for any action required of a claimant or beneficiary, including the filing of claims or evidence requested by VA, the first day of the specified period will be excluded and the last day included. . . . [where] the time limit expires on a workday. . . .

(b) *The first day of the specified period* referred to in paragraph (a) of this section shall be the date of mailing of notification to the claimant or beneficiary of the action required and the time limit therefor. The date of the letter of notification shall be considered the date of mailing for purposes of computing time limits.

(Emphasis in original.)

 Because section 7105(c) makes RO decisions final when an NOD is not timely filed except where the Secretary has provided by regulation for a specific exception not inconsistent with title 38 of the U.S.Code, the RO and BVA are authorized to extend the time limit for filing an NOD *only* as provided by the applicable regulation, § 3.109(b). The fact that the Secretary may by regulation extend the Board's jurisdiction by providing exceptions to finality under section 7105(c) does not render the NOD less of a jurisdictional requirement; the regulations must be lawfully promulgated by the Secretary and be "not inconsistent" with title 38 of the U.S.Code. We hold that § 3.109 and § 3.110 are such regulations. Therefore, the time for filing an NOD may be extended, or an NOD may be accepted if filed out of time, only when, as required by § 3.109(b), such an extension, or acceptance of an untimely NOD, has been requested and good cause for it has been shown.

 Thus, the Board may exercise jurisdiction based on an NOD timely filed under the statute—postmarked within one year after notice of an unfavorable RO decision is mailed to the claimant—or under the "not inconsistent" regulations prescribed by the Secretary. The Board may not do so, however, on any basis not provided for by the statute or such regulations.

ii. **NOD Filed in Present Case:** In the present case, the letter notifying the veteran of the July 21, 1988, initial denial of his claim is dated August 3, 1988. R. at 61. Therefore, under paragraphs (b) and (a), respectively, of § 3.110, August 3, 1988, is considered "the first day of the specified period", and that day is excluded from consideration in computing the time period for filing. The one-year period for filing the NOD in this case thus began on August 4, 1988, and, consequently, ended on August 3, 1989, a workday. Hence, pursuant to section 7105(b)(1), if the veteran's NOD was postmarked by August 3, 1989, it was timely filed. The NOD in question indicates that it was signed by the veteran on August 3, 1989 (a Thursday), and received by the Nashville, Tennessee, VARO on August 7, 1989 (a Monday). The RO, in its denial decision (R. at 67), its notification letter to the veteran (R. at 68), and the SOC (R. at 69–71), all in August 1989, treated the NOD as timely filed. Therefore, the veteran's NOD may well have been postmarked by August 3, 1989, and thus have been timely filed.

 The BVA, in its March 1991 decision, provides no rationale for its conclusion that "the veteran's [NOD] was not filed within the applicable one-year period from the date of notification of the denied claim". *Rowell*, BVA 91–07878, at 2. This deprives the Court of a sufficient basis to

determine whether the veteran's NOD was timely filed, and, thus, whether the Board's exercise of jurisdiction to conduct de novo review, as would be done in the case of an original claim, was proper. Because the jurisdictional facts (as to the BVA's jurisdiction) are not clear from the record, the matter must be remanded for determination as to when the veteran's NOD was postmarked (if it was, in fact, mailed).

Two other issues need to be addressed with regard to the Board's jurisdiction. First is whether the veteran timely filed a "formal appeal" under the statute. Second is why the RO in August 1990 stated that the veteran had "reopened" his claim on March 20, 1990, a conclusion which appears to conflict with the March 29, 1990, RO letter to the veteran, informing him that he had until August 7, 1990, to "complete" his appeal, meaning, as explained below, to file a Form 1–9 Appeal.

### B. Form 1–9 Appeal

**i. Law and Regulation:** With regard to the first question, 38 U.S.C. § 7105(d)(3) provides that, once the RO sends an SOC to the veteran, the veteran must file a "formal appeal" (called a "Substantive Appeal" in VA regulations, 57 Fed.Reg. 4088, 4112 (Feb. 3, 1992) (to be codified at 38 C.F.R. §§ 20.200, 20.202)) within 60 days after the date of the SOC. This "appeal" is generally filed on a VA Form 1–9 and is also known as a "1–9"; it will be referred to hereafter in this opinion as a "1–9 Appeal". Section 7105(d)(3) further provides that the 60–day period may be extended "for a reasonable period upon request" and "for good cause shown", and that the RO "may close the case for failure to respond" to the SOC, but that "questions as to timeliness and adequacy of responses shall be determined by the [BVA]." Pursuant to 57 Fed. Reg. at 4107 (to be codified at 38 C.F.R. § 19.32), even if the RO closes the appeal for failure to file with the RO, within the time provided, a 1–9 Appeal responding to the SOC, "if a Substantive Appeal is subsequently received within the 1–year appeal period (60–day appeal period for simultaneously contested claims) the appeal will be considered to be reactivated."

**ii. Form 1–9 Appeal in the Present Case:** Here, the SOC was dated August 24, 1989. R. at 68, 72. Therefore, the veteran had 60 days from that date to file a 1–9 Appeal. On October 23, 1989, the veteran requested a 60–day extension of time to file his 1–9 Appeal (without stating any basis for the request). In its November 7, 1989, letter, the RO granted an extension until December 30, 1989. R. at 74. In a December 29, 1989, letter (apparently received by VA in January 1990), the veteran requested another 60–day extension "due to circumstances beyond my control". R. at 75. The record does not reflect if that request was granted. On March 19, 1990, the veteran requested the RO by telephone for another 60–day extension in order to get medical information from physicians. R. at 77. In a March 29, 1990, letter, the RO said that it was granting an extension of time until June 1, 1990, but also stated: "As we advised you in our previous letter, you must complete your appeal if you intend to complete it before August 7, 1990. Again, the form 1–9 forwarded to you in January should be completed when you advise us to send your appeal to the [BVA]." R. at 80. At the June 5, 1990, RO hearing, the hearing officer stated that the veteran's representative had requested that the appeal be left open so that a 1–9 Appeal could be filed at a later date. R. at 83. On July 25, 1990, the veteran filed what he called an NOD to a July 18, 1990, RO decision. R. at 100. That form was stamped by VA as an NOD, but that stamp was crossed out and "IN LIEU OF 1–9" was handwritten on that form. R. at 100.

At first blush, the July 25, 1990, filing of this form as a "formal appeal" in lieu of a Form 1–9 would appear to be untimely. Even assuming that the veteran had received extensions of time between January and March 1990 to file his 1–9 Appeal (the record does not indicate whether he did), he apparently did not receive a formal extension beyond June 1, 1990, to file it. Thus, assuming that the July 25, 1990, document is a valid 1–9 Appeal, it was not filed within the 60–day period or within a specifically granted extension of time. However, in its

March 29, 1990, letter, the RO had indicated to the veteran that he had until August 7, 1990, to "complete his appeal", which is done by a 1–9 Appeal. *See* 57 Fed.Reg. at 4112 (Feb. 3, 1992) (to be codified at 38 C.F.R. § 20.202). The August 7, 1990, date would make the veteran's July 25, 1990, 1–9 Appeal timely.

█ It is not clear why the RO chose August 7, 1990, as the cutoff date. Presumably, that date was based upon the provision in 38 C.F.R. § 19.124 (1989) that a claim, even if closed by the RO, would be considered reactivated if the 1–9 Appeal were received within "the 1–year appeal period". Section 19.124 is somewhat ambiguous as to what is meant by "the 1–year appeal period". Presumably, it refers to the 1–year period for filing an NOD. New regulations, promulgated on February 3, 1992, after the filings in question here, state this clearly. Section 20.302(b) of the new regulations (57 Fed.Reg. 4113) provides: "[A] Substantive Appeal must be filed within 60 days from the date that the agency of original jurisdiction mails the [SOC] to the appellant, or within the remainder of the 1–year period from the date of mailing of the notification of the decision being appealed, **whichever period ends later.**" (Emphasis added.) Thus, where a claimant takes the entire one-year period to file an NOD, the one-year-period provision would not apply, but the claimant would still have 60 days more, following the mailing of the SOC, to file the 1–9 Appeal.

█ In the present case, since August 7, 1989, was the date that the veteran's NOD was received by the RO, the RO apparently believed that he had one year from that date to file a 1–9 Appeal. However, there is no logic or authority supporting the conclusion that a claimant has one year from the postmark date of the NOD to file a 1–9 Appeal. Rather, much like the NOD filing requirements discussed above, a claimant has only the statutory 60–day period for filing a 1–9 Appeal, subject to the exception that that period may be extended upon request and for good cause.

█ **iii. Non–Jurisdictional Nature of Form 1–9 Appeals:** In determining the effect of an untimely filing of a 1–9 Appeal, it is instructive to contrast the statutory and regulatory provisions governing that filing with those governing the filing of a timely NOD, which we have concluded in part B, above, is a prerequisite to the Board's proper exercise of jurisdiction over a claim. In contrast to the requirements for timely filing an NOD, the "request" and "good cause" requirements are statutory as to the 1–9 Appeal (38 U.S.C. § 7105(d)(3)) rather than regulatory (38 C.F.R. § 19.124 (replaced by § 20.302(b)). And statutory section 7105(d)(3) provides explicitly that a claimant may appeal to the BVA any determination by the RO to close the claim for failure to respond to the SOC. *See also* 57 Fed.Reg. at 4107 (to be codified at 38 C.F.R. § 19.34). That same authority is inherent in the Board's determining the validity of an NOD for purposes of its own jurisdiction.

█ The biggest difference between the filing requirements for the NOD and the 1–9 Appeal, however, is that failure to file a timely 1–9 Appeal does not automatically foreclose an appeal, render a claim final, or deprive the BVA of jurisdiction. Statutory section 7105(d)(3) and regulation § 19.124 (replaced by § 20.302(b)) provide that an RO **may** close an appeal for failure to respond to the SOC. However, the statute and regulations do not **require** an RO to close a claim in that situation; nor do they provide that the claim will become final if the claimant fails to file a timely 1–9 Appeal.

█ Therefore, regardless of the reason why the RO arrived at the August 7, 1990, closing date for filing the 1–9 Appeal, the RO had the authority to accept a 1–9 Appeal filed in July 1990 as well as to have informed the veteran on March 29, 1990, that it would close the claim if his 1–9 Appeal had not been filed by August 7, 1990. Because there is no indication that the RO "closed" the appeal for failure to file a timely 1–9 Appeal, and because it appears to have treated his July 25, 1990, filing as timely, there is no problem, with regard to the timeliness of the filing of the

1-9 Appeal, which would deprive the Board of jurisdiction over this case as an original claim.

### C. Reopening

As to the RO's statements in an August 8, 1990, decision and an August 17, 1990, SOC that the veteran had reopened his claim on March 20, 1990 (R. at 101, 104), nothing in the record explains why the RO so concluded. The RO's March 19, 1990, report of contact with the veteran (R. at 77) and its March 29, 1990, letter to the veteran (R. at 80) both treat his claim as still open based on the original application in April 1988, and the RO in March 1990 had specifically granted the veteran an extension until June 1, 1990, to file a 1-9 Appeal and indicated to him that he absolutely had to file one by August 7, 1990. R. at 80. As noted above, although the RO had the authority to "close" the appeal for failure to respond to the SOC when the veteran failed to file his 1-9 Appeal by June 1, 1990 (the end date of the "good-cause" extension explicitly granted by the RO), not only is there no indication that the RO did in fact or in law so "close" the claim, but there is even evidence to the contrary in that the veteran's July 25, 1990, purported NOD was apparently accepted as a 1-9 Appeal by the RO. R. at 100. Therefore, the Court has no basis for concluding that the veteran's present claim is a reopened claim **filed on March 20, 1990,** and, indeed, the BVA never suggested that the veteran's claim was reopened as of March 1990.

### D. New and Material Evidence to Reopen

However, should the Board determine that the NOD was not postmarked on or before August 3, 1989, and should this Court sustain such a determination as not "clearly erroneous" under 38 U.S.C. § 7261(a)(4) (formerly § 4061), then the claim here on appeal must be considered a reopened claim filed as of the date that the August 3, 1989, NOD was received (August 7, 1989). At that time, the veteran submitted three lay statements attesting to his ear problems shortly after service and that he had not had such problems prior to service. R. at 62–64. The veteran also testified under oath before the RO on June 5, 1990, to the effect that he had received treatment for a hearing loss right up to his discharge from service and within one week after discharge and regularly thereafter. R. At 85–89.

Pursuant to 38 U.S.C. § 5108, a previously and finally disallowed claim must be reopened by the Secretary when "new and material evidence" is presented or secured with respect to that claim. See 38 U.S.C. § 7104(b) (formerly § 4004). On claims to reopen previously and finally disallowed claims, the BVA must conduct a "two-step" analysis. Manio v. Derwinski, 1 Vet.App. 140, 145 (1991). First, it must determine whether the evidence presented or secured since the prior final disallowance of the claim is "new and material". If it is, the Board must then review the new evidence "in the context of" the old to determine whether the prior disposition of the claim should be altered. Jones (McArthur) v. Derwinski, 1 Vet.App. 210, 215 (1991).

"New" evidence is evidence which is not "merely cumulative" of other evidence in the record. Colvin v. Derwinski, 1 Vet.App. 171, 174 (1991). For evidence to be "material", it must be "relevant and probative" and "there must be a reasonable possibility that the new evidence, when viewed in the context of all the evidence, both new and old, would change the outcome." Ibid; see Jones, supra. For purposes of determining whether evidence is "new and material", "the credibility of the evidence is to be presumed." Justus v. Principi, 3 Vet.App. 510, 513, No. 91–1596, slip op. at 4 (1992). The determination as to whether evidence is "new and material" is a conclusion of law which this Court reviews de novo under 38 U.S.C. § 7261(a)(1) (formerly § 4061). See Masors v. Derwinski, 2 Vet.App. 181, 185 (1992); Jones, 1 Vet.App. at 213; Colvin, supra.

On the facts of this case, the Court holds that the three lay statements and the veteran's testimony, assuming their credibility for purposes of determining whether

they were "new and material", were probative and, when considered in the context of all the evidence, new and old, created a reasonable possibility of changing the outcome. Hence, there was new and material evidence to justify reopening the claim on August 17, 1989, if it is determined that the August 3, 1989, NOD was not a valid NOD as to the original claim.

### E. The BVA's Adjudication

Accordingly, the Board had jurisdiction and was obligated to adjudicate the claim on the merits in accordance with all applicable law and regulation—either as a reopened claim under *Manio* and *Jones*, or as an original claim if the August 3, 1989, NOD is determined to be valid. The Court holds that the adjudication process was infected by two prejudicial errors: The Board's failure to provide adequate reasons or bases for its evaluation of the veteran's testimony and the lay statements, and to address the veteran's requests for assistance in locating additional service medical records.

 First, under 38 U.S.C. § 7104(d)(1) (formerly § 4004), the Board must provide a written statement of the reasons or bases for its findings and conclusions. *See Gilbert v. Derwinski*, 1 Vet. App. 49, 56–57 (1990). Here, the Board stated that the veteran's sworn testimony and the lay statements do not provide a "persuasive" basis for a grant of service connection, "in light of the entire evidentiary record", which included no clinical documentation of hearing loss until several years after service. *Rowell*, BVA 91–07878, at 9. The mere statement that "we have carefully considered the veteran's statements and those submitted in support of his claim" is not adequate to explain the Board's evaluation of that evidence or why that evidence alone was not found sufficient to establish service connection absent contemporaneous medical evidence. *See Cartright v. Derwinski*, 2 Vet.App. 24 (1991) (lay evidence alone may be sufficient to place the evidence in equipoise and thus, under 38 U.S.C. § 5107(b) (formerly § 3007), establish entitlement to benefits).

Here, the Board must do more than simply point to an absence of medical evidence; it must offer some basis for finding the lay evidence insufficient to establish entitlement to benefits. Furthermore, it is not enough for the BVA to say that it has "considered" the veteran's testimony and evidence, without making findings as to the credibility and probative value of that evidence. *See Ashmore v. Derwinski*, 1 Vet. App. 580, 583–84 (1991); *Hatlestad v. Derwinski*, 1 Vet.App. 164, 169–70 (1991). Consequently, remand for such a statement of reasons or bases is necessary.

 Under 38 U.S.C. § 5107(a) (formerly § 3007), once a claimant submits a well-grounded claim, the Secretary has a duty "to assist a claimant in developing the facts pertinent to the claim." *See Godwin v. Derwinski*, 1 Vet.App. 419, 425 (1991). "A well[-]grounded claim is a plausible claim, one which is meritorious on its own or capable of substantiation." *Murphy v. Derwinski*, 1 Vet.App. 78, 81 (1990). Here, the veteran's claim, whether as an original claim or a reopened claim, was well grounded. "Inherent in the duty-to-assist obligation and the *Gilbert* explanation mandate is a requirement for the Secretary to respond to a claimant's requests for VA assistance one way or the other." *Godwin, supra.* Yet, the Board apparently did not respond to the veteran's express request for assistance in locating additional service medical records (SMRs). R. at 107. Although the original VA request for SMRs from the National Personnel Records Center did request "all" SMRs, and thus may have adequately carried out VA's duty to assist with regard to SMRs (*see* R. at 18), the RO and BVA were still required to respond to the claimant's specific requests for further assistance. Similarly, the veteran requested that he be examined by VA before his appeal was sent to the BVA, noting that a prior VA examination had been canceled. R. at 111. Although there may not be good reason for an examination in this case, where the issue is service connection relating to service in the early 1950s, the RO and BVA should have at least responded to that claim, and neither apparently did so.

**20**

### III. CONCLUSION

For the foregoing reasons, the Court vacates the BVA's March 12, 1991, decision and remands the matter to the Board for prompt fulfillment of the duty to assist and prompt readjudication of the claim in accordance with this opinion, including a determination as to whether the August 3, 1989, NOD was postmarked on or before August 3, 1989. *See Fletcher v. Derwinski,* 1 Vet. App. 394, 397 (1991). On remand, the veteran is free to offer additional evidence and argument. *See Quarles v. Derwinski,* 3 Vet.App. 129, 141 (1992). A final decision by the Board following the remand herein ordered will constitute a new decision which, if adverse, may be appealed to this Court only upon the filing of a new Notice of Appeal with the Court not later than 120 days after the date on which notice of the new decision is mailed to the appellant.

VACATED AND REMANDED.