Kevin E. OREDSON, Appellant,

v.

Jesse BROWN, Secretary of Veterans Affairs, Appellee.

No. 91–1700.

United States Court of Veterans Appeals.

March 30, 1993.

Before STEINBERG, Associate Judge.

---

**MEMORANDUM DECISION**

STEINBERG, Associate Judge:

The pro se appellant, veteran Kevin E. Oredson, appeals from a July 22, 1991, decision of the Board of Veterans' Appeals (BVA or Board) denying service-connected disability compensation for a psychiatric disorder. *Kevin E. Oredson*, BVA 91-____ (July 22, 1991). The Secretary of Veterans Affairs (Secretary) has moved for summary affirmance. Summary disposition is appropriate because the case is one "of

relative simplicity" and the outcome is controlled by the Court's precedents and is "not reasonably debatable". *Frankel v. Derwinski*, 1 Vet.App. 23, 25–26 (1990). The Court will vacate the Board's decision and remand the matter for further proceedings consistent with this decision.

## I. BACKGROUND

The veteran served on active duty in the U.S. Coast Guard from February 12, 1968, to February 11, 1972. R. at 111. His duty assignments as a radio specialist included several months of "isolated duty" in 1968 and 1969 at a Coast Guard Light Station at Five Finger, Alaska, a small island housing only four persons. R. at 273–74, 376. The veteran's service records reveal no complaints of or treatment for psychiatric problems. Supp.R. at 1–14.

In April 1982 the veteran filed with a Veterans' Administration (now Department of Veterans Affairs) (VA) regional office (RO) a claim for service-connected disability compensation for a nervous disorder. R. at 103. The evidence received by the RO in support of that claim included reports of the veteran's hospitalization at a VA facility from August 5 to September 7, 1973, with complaints of depression. R. at 72. On the report of discharge from that hospitalization, a VA psychiatrist diagnosed the veteran with "schizophrenia, chronic, undifferentiated" and noted that the veteran attributed the onset of that condition to his isolated service in Alaska. *Ibid.* The RO also received reports of subsequent VA treatment and hospitalizations in 1975, 1981, and 1982, yielding various psychiatric diagnoses, including anxiety, depression, and borderline personality disorder. R. at 20, 76, 105.

In December 1982, the RO denied the veteran service-connected disability compensation for a claimed psychiatric disorder on the ground that there was no evidence of such disorder during service or within one year thereafter. R. at 111–12. The RO, however, awarded him service connec-

**452**

tion for a psychiatric condition for treatment purposes only, based on the diagnosis of chronic schizophrenia in August 1973. R. at 111–12; *see* 38 U.S.C.A. § 1702 (West 1991) (treatment-purposes-only service connection for active psychosis manifest within two years after separation from service). That decision became final when the veteran failed to file a timely appeal. *See* 38 U.S.C.A. § 7105(c) (West 1991); *Rowell v. Principi*, 4 Vet.App. 9, 14–15 (1993).

In November 1988, the veteran requested the RO to reopen his claim for service-connected disability compensation for a psychiatric disorder. R. at 376. He asserted that his term of isolated duty at the Five Finger Light Station in Alaska had given rise to a psychiatric disorder. *Ibid.* The evidence received by the RO in support of this request to reopen included reports of the veteran's treatment at a VA facility on March 26, 1973, thirteen-and-one-half months after separation from service, after a suicide attempt. R. at 1–8. The VA examiner diagnosed a "situational disturbance" and noted that there was "no evidence of psychosis". R. at 1. The RO also received numerous records of VA and private treatment and hospitalizations between 1982 and 1988. R. at 123–71, 198–203, 212–23, 233–46, 250–52, 257–315, 318–68, 371–75, 427–41, 444–52, 460–71. Those reports contained numerous different psychiatric diagnoses, including "psychotic depression" (R. at 123), "possible dysthymic disorder" (R. at 161), "atypical psychosis" (R. at 165), "bipolar affective disorder" (R. at 245), "major depression" and "mixed personality disorder" (R. at 252, 288, 461), "borderline personality disorder" (R. at 372), and "chronic paranoid schizophrenia" (R. at 461, 466). The RO denied the claim in May 1990 and the veteran filed a timely appeal to the BVA. R. at 491.

In June 1990, the veteran testified under oath before the RO that he had not had any problems prior to his service; that his psychiatric problems had begun during his duty at the Five Finger Light Station, due to his extreme isolation; and that he had had psychiatric problems ever since that time. R. at 512–39. The record also reflects that the veteran submitted to the RO a December 1989 letter from a captain in

the U.S. Public Health Service stating that some individuals who had served isolated duty assignments had had to undergo an adjustment period; however, a copy of that letter does not appear in the record before this Court. R. at 267, 489, 532.

In its July 1991 decision currently here on appeal, the Board concluded that the evidence received since the prior final RO denial of the claim in 1982 was "new and material", requiring the claim to be reopened and readjudicated de novo. *Oredson*, BVA 91–____, at 4–5. Specifically, the Board noted that the records of psychiatric treatment in 1973 were new and material in that they "bridge part of the gap in post service continuity of symptomatology". *Id.* at 4. Upon reopening and readjudication, however, the Board denied the claim. The Board stated:

> To the extent that [the veteran's disorder] is a neurosis or psychosis, it remains not shown to have been manifest in service (or in the case of a psychosis) within one year following the veteran's discharge from active duty. The earliest clinical evidence of the existence of a psychiatric disorder consists of that newly received report of treatment in March 1973, some 13 months after the veteran's discharge from active duty.... At that time a situational disturbance was diagnosed. It was specifically noted that there was no evidence of a psychosis. The veteran's subjective statements attributing the onset of the depression and other psychiatric symptoms noted in March 1973 and afterwards to a period of stressful service in an isolated location in Alaska in 1968 are not supported by any objective evidence of record. His service medical records are devoid of any mention of psychiatric complaints and/or symptoms. On examination for separation from active duty, psychiatric evaluation was normal. No psychiatric complaints or symptoms were reported in the first post service year.

*Id.* at 4–5.

## II. ANALYSIS

### A. *New and material evidence*

██ Pursuant to 38 U.S.C.A. § 5108 (West 1991), the Secretary must reopen a

previously and finally disallowed claim when "new and material evidence" is presented or secured with respect to that claim. 38 U.S.C.A. § 7104(b) (West 1991). "New" evidence is evidence which is not "merely cumulative" of other evidence in the record. *Colvin v. Derwinski*, 1 Vet. App. 171, 174 (1991). For evidence to be "material", it must be "relevant [to] and probative of the issue at hand" and "there must be a reasonable possibility that the new evidence, when viewed in the context of all the evidence, both new and old, would change the outcome." *Ibid; see Jones (McArthur) v. Derwinski*, 1 Vet.App. 210, 213 (1991). On claims to reopen previously and finally disallowed claims, the BVA must conduct a two-step analysis. *Manio v. Derwinski*, 1 Vet.App. 140, 145 (1991). First, it must determine whether the evidence presented or secured since the prior final disallowance of the claim is "new and material". If it is, the Board must then review the new evidence "in the context of" the old to determine whether the prior disposition of the claim should be altered. *Jones*, 1 Vet.App. at 215.

■ The determination as to whether evidence is "new and material" is a conclusion of law which this Court reviews de novo under 38 U.S.C.A. § 7261(a)(1) (West 1991). *See Masors v. Derwinski*, 2 Vet. App. 181, 185 (1992); *Jones, supra; Colvin, supra*. In the present case, for the reasons set forth in the Board's July 1991 decision, the Court concludes that there was new and material evidence requiring reopening and readjudication of the veteran's claim. *See Oredson*, BVA 91–____, at 4.

## B. Service-connected disability compensation

■ VA disability compensation may be paid for any disease or injury shown to have been incurred in or aggravated by active military, naval, or air service. *See* 38 U.S.C.A. § 1110 (West 1991); 38 C.F.R. § 3.303 (1992). As to certain conditions, including psychoses, service connection for compensation purposes will be presumed when the condition is manifested to a 10%

degree within a prescribed presumption period (within one year after discharge for psychoses). *See* 38 U.S.C.A. § 1112 (West 1991); 38 C.F.R. §§ 3.307, 3.309 (1992). In its July 1991 decision, the Board denied service connection for a claimed psychiatric disorder because there was no evidence "that an acquired psychiatric disorder was manifested in service or that a psychosis was manifested within one year following the veteran's discharge from active duty." *Oredson*, BVA 91–____, at 5.

However, 38 C.F.R. § 3.303(d) (1992) provides:

> Service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. Presumptive periods are not intended to limit service connection to diseases so diagnosed when the evidence warrants direct service connection.

Here, the veteran testified under oath that his psychiatric problems had begun during his in-service isolation (R. at 512–39), and medical records from September 1973 reflect that he had then asserted that his conditions resulted from his in-service isolation (R. at 72). He also submitted a letter from a Public Health Service official apparently stating that some service personnel have had problems adjusting after periods of isolated service. In light of section 3.303(d), the Board was required to consider and discuss this evidence supporting the veteran's claim that his psychiatric disorder was caused by his period of isolation in service, regardless of whether that condition was actually manifested during his service or within the one-year presumption period as to psychoses.

As this Court stated in *Cosman v. Principi*, 3 Vet.App. 503, 505 (1992): "According to [§ 3.303(d)], even though a veteran may not have had a particular condition diagnosed in service, or for many years afterwards, service connection can still be established." *See Triplette v. Principi*, 3 Vet.App. 370, 375 (1992) ("If ... the veteran's schizophrenia did not manifest itself within the statutory presumpti[on] period,

**454**

he may establish service connection by submitting direct evidence"); *Godfrey v. Derwinski*, 2 Vet.App. 352, 356 (1992) (evidence showing a nexus between current disability and veteran's service is sufficient to establish service connection); *Douglas v. Derwinski*, 2 Vet.App. 103, 108–09 (1992) ("claim for direct service connection ... is not invalid, as a matter of law, if evidence of it did not manifest during service or within one year thereafter"). Therefore, pursuant to the "reasons or bases" requirement of 38 U.S.C.A. § 7104(d)(1) (West 1991), the Board was required to explain its evaluation of the veteran's evidence and argument pertaining to the possibility of direct service connection on the basis that the veteran's in-service isolation caused his later-manifested psychiatric disability. *See Cosman, supra; Douglas, supra; Gilbert v. Derwinski*, 1 Vet.App. 49, 56–57 (1990).

The Court notes that the numerous hospital and treatment reports in the record do not contain diagnoses as to the cause of the veteran's diagnosed psychiatric disability or disabilities. In view of this absence of any medical evidence identifying a cause for the veteran's psychiatric disability or disabilities, the Board may wish to order an examination of the veteran for purposes of determining whether his current disability or disabilities may be related to his service. *See Rhodes v. Brown*, 4 Vet.App. 124, 126 (1993); *Johnson (Michael) v. Principi*, 3 Vet.App. 448, 449 (1992); *Dixon v. Derwinski*, 3 Vet.App. 261, 264 (1992); *Witherspoon v. Derwinski*, 2 Vet.App. 4 (1991) (per curiam); *see also* 38 C.F.R. §§ 4.1 (each disability must be viewed in relation to its history); 4.2 (if examination report contains insufficient detail, BVA must return it as inadequate); 4.10 (medical examiner must furnish, inter alia, etiological data). Additionally, the Board is free to request an independent medical opinion pursuant to 38 U.S.C.A. § 5109 (West 1991) and 38 C.F.R. § 3.328 (1992). *See Cousino v. Derwinski*, 1 Vet.App. 536, 540 (1991).

### III. CONCLUSION

Upon consideration of the record, the appellant's informal brief, and the Secretary's motion for summary affirmance, the Court denies the Secretary's motion, summarily vacates the July 22, 1991, BVA decision, and remands the matter to the Board for prompt further proceedings consistent with this decision, including a full and fair readjudication of the veteran's claim on the basis of all evidence of record and all applicable law and regulation. *See Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991). On remand, the appellant will be free to submit additional evidence and argument. *See Quarles v. Derwinski*, 3 Vet.App. 129, 141 (1992); *Godfrey*, 2 Vet.App. at 357. The Court retains jurisdiction. The Secretary shall file with the Clerk (as well as serve upon the appellant) a copy of any Board decision on remand. Within 14 days after the filing of any such final decision, the appellant shall notify the Clerk whether he desires to seek further review by the Court.

VACATED AND REMANDED.