Citation Nr: 1518718 
Decision Date: 04/30/15 Archive Date: 05/05/15

DOCKET NO. 09-33 589 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Newark, New Jersey


THE ISSUES

1. Entitlement to service connection for a low back disability, to include as secondary to a knee disability.

2. Entitlement to service connection for a left knee disability.

3. Entitlement to service connection for a right knee disability.

4. Entitlement to service connection for prostate enlargement.

5. Entitlement to service connection for bilateral hearing loss.

6. Entitlement to service connection for malignant neoplasms of the skin.

7. Entitlement to service connection for a skin disorder.

8. Entitlement to service connection for hypertension, to include as secondary to posttraumatic stress disorder (PTSD).

9. Entitlement to an initial evaluation in excess of 30 percent for PTSD, prior to January 27, 2010; in excess of 50 percent from that date to December 15, 2011, exclusive of the period for which the Veteran received a temporary total evaluation; and in excess of 70 percent, from December 15, 2011.

10. Entitlement to a total disability rating on the basis of individual unemployability due to service-connected disabilities (TDIU) for the period prior to December 15, 2011.


REPRESENTATION

Appellant represented by: Disabled American Veterans


WITNESS AT HEARING ON APPEAL

Appellant


ATTORNEY FOR THE BOARD

Robert J. Burriesci, Counsel


INTRODUCTION

The Veteran served on active duty from August 1963 to August 1966.

This case comes before the Board of Veterans' Appeals (Board) on appeal of December 2008, August 2009 and June 2011 rating decisions of the Department of Veterans Affairs (VA) Regional Office (RO) in Newark, New Jersey.

The Veteran testified before the undersigned Veterans Law Judge in December 2011 and January 2015. Transcripts of the hearings are of record.

In an April 2012 rating decision, the evaluation of the Veteran's PTSD was increased to 70 percent disabling, effective December 15, 2011. Although each increase represents a grant of benefits, a decision awarding a higher rating, but less than the maximum available benefit, does not abrogate the pending appeal. AB v. Brown, 6 Vet. App. 35, 38 (1993). Thus, the matter continues before the Board.

The claims were previously before the Board in April 2012 and were remanded for further development.

In April 2012 the Board ordered that the Veteran be provided a Statement of the Case (SOC) regarding his claim for a higher evaluation for PTSD and that he be notified of the need to file a timely substantive appeal. Thereafter, in January 2015 the Board took testimony on the issue of entitlement to a higher evaluation for PTSD. A substantive appeal is deemed a non-jurisdictional requirement which, in certain circumstances, can be waived by the actions of the AOJ or the Board. See Rowell v. Principi, 4 Vet. App. 9 (1993); also Percy v. Shinseki, 23 Vet. App. 37 (2009). As such, the issue of entitlement to a higher evaluation for PTSD is before the Board.

Where, as here, a claimant, or the record raises the question of unemployability due to the disability for which an increased rating is sought, then part of the increased rating claim is an implied claim for TDIU. Rice v. Shinseki, 22 Vet. App. 447, 453-55 (2009). In a May 2012 statement the Veteran reported that he left his employment in December 2008 due to his PTSD, kidney condition, and chronic lower back pain. He reported that he had not tried to obtain employment since he became too disabled to work. The Veteran has been awarded TDIU, effective December 15, 2011; however, as the Veteran has a claim of entitlement to a higher evaluation for PTSD pending prior to December 15, 2011, and as he indicates that he is unemployable due to his service-connected PTSD prior to December 15, 2011, the Board has added the issue of entitlement to a TDIU prior to December 15, 2011, to the issues on appeal.

In July 2014 the Veteran was awarded compensation benefits for facet joint arthropathy pursuant to 38 U.S.C.A. § 1151 and was assigned an evaluation of 20 percent disabling effective January 26, 2009. Thereafter, in July 2014 the Veteran stated that he wanted to file a claim of entitlement to an increase for this disability. This represents a new claim for an increased evaluation. In April 2010 the Veteran filed a claim for bilateral foot neuropathy. These issues have not been adjudicated by the Agency of Original Jurisdiction (AOJ). Therefore, the Board does not have jurisdiction over them, and they are referred to the AOJ for appropriate action. 38 C.F.R. § 19.9(b) (2014). 

The appeal is REMANDED to the AOJ. VA will notify the appellant if further action is required.


REMAND

Outstanding treatment records should be obtained. The Veteran receives at the VA Medical Center (VAMC) in East Orange, New Jersey, and records dated through December 2014 have been obtained. The Veteran receives treatment from the Community-Based Outpatient Clinic (CBOC) in Brick, New Jersey, and records dated through March 2012 have been obtained. On remand, records for any treatment after those time periods should be obtained. 38 C.F.R. § 3.159.

Review of the claims file reveals that the Veteran received treatment at the Jersey Shore Medical Center; however, complete records of this treatment have not been associated with the claims file. As such, after obtaining any necessary authorization, attempts must be made to obtain these records. 38 C.F.R. § 3.159.

The Veteran was awarded compensation for facet joint arthropathy pursuant to 38 U.S.C.A. § 1151.

A service treatment record dated in May 1966 reveals complaints of low back pain. Although the Veteran currently states that he injured his back in service, he has previously stated on a number of occasions that he did not have any back pain or problems prior to his left nephrology surgery.

The Veteran has been diagnosed with moderate predominantly osteophytic degenerative changes of the spine as well as multilevel degenerative spondylosis. See e.g. April 2009 and May 2009 Imaging Notes. In addition in a January 2010 physical therapy note the Veteran was reported to have exacerbation of chronic low back pain status post motor vehicle collision. There was bilateral tight lumbar musculature and mechanical factors including use of crutches and avoidance of left weight bearing due to knee pain. 

The Veteran was afforded a VA back examination in July 2012. The examiner found that the Veteran had chronic low back pain related to a left nephrectomy performed at VA in January 2009. However, there was no opinion provided regarding whether the Veteran had a separate spine disability related to or permanently aggravated by his knee disabilities (a claim for which is also on appeal). As the knee claims are being remanded for an examination, the examiner should address whether any diagnosed knee disabilities are aggravating any separately diagnosed spine disability. 38 C.F.R. § 3.159; McLendon v. Nicholson, 20 Vet. App. 79 (2006).

The Veteran has not been afforded a VA examination regarding the etiology of his knee disabilities. The claims file reveals that the Veteran has been diagnosed with left and right knee degenerative joint disease. The Veteran has contended that he injured his knees in service by jumping off of machines and jumping into and out of fox holes while in Vietnam. The Veteran has also reported that he injured his knees in service while playing football. Service treatment records do not reveal complaint, diagnosis, or treatment for a knee disorder. However, the service treatment records reveal complaint of and treatment for a twisted ankle which indicates that there was some orthopedic injury. In addition, VA treatment records reveal a report of a left knee injury in service in 1964. As such the Board finds that the Veteran must be afforded a VA medical examination regarding the etiology of his knee disabilities. 38 C.F.R. § 3.159; McLendon, 20 Vet. App. at 79.

The Veteran was afforded VA genitourinary examination in August 2008 and a male reproductive systems examination in January 2015. These examinations diagnosed an enlarged prostate; however, no opinion regarding etiology was offered. Once VA undertakes the effort to provide an examination when developing a service-connection claim, even if not statutorily obligated to do so, it must provide an adequate one or, at a minimum, notify the claimant why one will not or cannot be provided. Barr v. Nicholson, 21 Vet. App. 303 (2007). As such, the Board finds the examination to be inadequate and the Veteran must be afforded another VA medical examination. 

In August 2009 the Veteran was afforded a VA examination which revealed bilateral hearing loss pursuant to 38 C.F.R. § 3.385. The examiner rendered the opinion that the Veteran's hearing loss was not as likely as not related to his active service based upon the status of the Veteran's hearing at the time of his separation. The Veteran testified at the recent hearing that he was exposed to loud noise during service while working as a heavy fuel mechanic. His military occupational specialty was engine repairman. The examiner made no reference to the Veteran's reports of in-service acoustic trauma or why the conceded noise exposure was not a source of the current hearing loss. Hensley v. Brown, 5 Vet. App. 155 (1993). Thus, another opinion is required. 

In July 2008 the Veteran was afforded a VA examination after which he was diagnosed with skin lesions in the form of skin tags; however, no opinion was rendered regarding the etiology of the skin condition. The examination is inadequate and the Veteran must be afforded another VA medical examination. Barr, 21 Vet. App. at 311. 

In July 2008 the Veteran was afforded a VA medical examination regarding the etiology of his hypertension. The examiner noted that there was no claims file present for review. The past medical history was noted to include a diagnosis of essential hypertension in 1966 shortly after discharge from service and the Veteran was started on medications at that time. He reported a hospitalization for hypertensive urgency approximately 25 years prior at the Jersey Shore Medical Center. The examiner diagnosed essential hypertension controlled with three medications. The Board is aware that, by definition, essential hypertension does not have a known cause; however, the Veteran has argued that his hypertension is due to or aggravated by his PTSD. Thus, another opinion is required and must consider the reported initial diagnosis shortly after service separation and the effect of the service-connected PTSD. 38 C.F.R. § 3.159; Barr, 21 Vet. App. at 311. 

The most recent VA examination evaluating the Veteran's PTSD disability was performed in September 2014. At the hearing before the undersigned in January 2015 the Veteran stated " . . . my PTSD is worse instead of getting better . . . I've been seeing my psychologist and psychiatrist for the last three years and I've been seeing [a doctor] weekly and I see my psychologist monthly." These statements indicate that the Veteran's PTSD may have worsened since the prior examination. Therefore, the Board finds that it must remand the claim to obtain contemporaneous VA examinations to assess the current nature, extent and severity of his disability. See Snuffer v. Gober, 10 Vet. App. 400 (1997).

Given the disability ratings currently in effect for the period prior to December 15, 2011, the Veteran does not meet the schedular criteria for assignment of a TDIU. However, providers have reported that the Veteran has been unable to work since December 2008 and adjudication of the other remanded issues may affect whether the schedular criteria are met. 

Nevertheless, it is VA policy to grant TDIU in all cases where a Veteran is unable to work due to service connected disability. Rating boards are required to submit to the Director, Compensation and Pension Service (Director), for extraschedular consideration, all cases of Veterans who are unemployable by reason of service-connected disability(ies), but who fail to meet the percentage standards set forth in 38 C.F.R. § 4.16(a). 38 C.F.R. § 4.16(b). The Board has no authority to assign a TDIU under 38 C.F.R. § 4.16(b) in the first instance. Bowling v. Principi, 15 Vet. App. 1 (2001). If after development and readjudication of the other issues currently on appeal, the Veteran does not meet the schedular criteria for assignment of a TDIU, the matter of entitlement to a TDIU must be submitted to the Director of the Compensation and Pension.

Additional evidence has been associated with the claims file since the prior Supplemental Statements of the Case without a waiver of AOJ consideration. As the issues are being remanded for additional development, the AOJ will have an opportunity to consider this evidence in the first instance. 38 C.F.R. §§ 19.31, 19.37, 20.1304.

Accordingly, the case is REMANDED for the following action:

1. Obtain and associate with the claims file all VA treatment records regarding the Veteran from the VAMC in East Orange, New Jersey, dated since December 2014, and from the CBOC in Brick, New Jersey, dated since March 2012.

2. After obtaining any necessary authorization, obtain and associate with the claims file complete treatment records regarding the Veteran from the Jersey Shore Medical Center. 

3. Thereafter, the Veteran should be afforded the appropriate VA examination to determine the etiology of any spine disability found to be present. The claims file and copies of all pertinent records must be made available to and reviewed by the examiner in conjunction with the examination. All pertinent symptomatology and findings should be reported in detail. Any indicated diagnostic tests and studies should be accomplished. Based on the examination and review of the record, the examiner should address the following: 

(a) Is it at least as likely as not (50 percent or higher degree of probability) that any currently diagnosed spine disability found to be present was caused by or permanently aggravated by any knee disability?

(b) Does this disability represent a distinct disability from that for which the Veteran receives compensation pursuant to 38 U.S.C.A. § 1151?

The examiner is informed that aggravation is defined for legal purposes as a chronic worsening of the underlying condition versus a temporary flare-up of symptoms, beyond its natural progression. If aggravation is present, the clinician should indicate, to the extent possible, the approximate level of disability (baseline) before the onset of the aggravation. 

4. Thereafter, the Veteran should be afforded an appropriate VA examination(s) to determine the etiology of any knee, prostate, and/or skin disability found to be present. Provide the examiner the Veteran's claims file for review. 

For each diagnosed disorder, the examiner should provide an opinion as to whether it is at least as likely as not (a 50 percent or greater chance) that any knee, prostate, and/or skin disability found to be present is related to disease, injury, or other events during the Veteran's service. The examiner should comment upon the Veteran's in service complaints. Ask the examiner to explain the conclusions reached.

5. Thereafter, arrange for the Veteran to undergo an appropriate VA examination to determine the nature, extent, onset and etiology of any bilateral hearing loss found to be present. The claims file should be made available to and reviewed by the examiner. All indicated studies, including an audiological evaluation, should be performed, and all findings should be reported in detail. The examiner should comment on the lay statements of record relating to the Veteran's hearing loss and opine as to whether it is at least as likely as not (a 50 percent or greater probability) that any hearing loss found to be present is related to or had its onset during service. The rationale for all opinions expressed should be provided.

6. Thereafter, the Veteran should be afforded the appropriate VA examination to determine the etiology of any hypertension found to be present. The claims file must be made available to the examiner for review in conjunction with the examination. All pertinent symptomatology and findings should be reported in detail. Any indicated diagnostic tests and studies should be accomplished. Based on the examination and review of the record, the examiner should address the following: 

(a) Is it at least as likely as not (50 percent or higher degree of probability) that any current hypertension was incurred in or aggravated by service?

(b) Is it at least as likely as not (50 percent or higher degree of probability) that any current hypertension was caused by his service-connected PTSD?

(c) Is it at least as likely as not that the Veteran's service-connected PTSD aggravated any current hypertension?

The rationale for all opinions expressed should be provided.

7. Thereafter, the Veteran should be afforded an appropriate VA examination to determine the nature, extent and severity of his PTSD disability. The claims file should be made available to and reviewed by the examiner. All indicated tests should be performed. 

The examiner is requested to delineate all symptomatology associated with, and the current severity of, the PTSD. The appropriate Disability Benefits Questionnaire (DBQs) should be filled out for this purpose, if possible. 

8. Thereafter, readjudicate the Veteran's claims for service connection and increased evaluation, with application of all appropriate laws and regulations, including consideration of any additional information obtained as a result of this remand. 

9. Thereafter, if and only if the Veteran does not meet the schedular criteria for the assignment of a TDIU for the period prior to December 15, 2011, under 38 C.F.R. § 4.16(a), refer the claim of entitlement to a TDIU prior to December 15, 2011, to VA's Director of C&P for consideration of entitlement to a TDIU under the provisions of 38 C.F.R. § 4.16(b) is appropriate.

10. If the decision with respect to the claims remains adverse to the Veteran, furnished a supplemental statement of the case and afforded a reasonable period of time within which to respond.

The appellant has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



_________________________________________________
M. E. LARKIN
Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C.A. § 7252 (West 2014), only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100(b) (2014).