Citation Nr: 1702637 
Decision Date: 01/31/17 Archive Date: 02/09/17

DOCKET NO. 06-38 935 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs (VA) Regional Office (RO)
in San Juan, the Commonwealth of Puerto Rico


THE ISSUES

1. Entitlement to higher ratings initial and subsequent ratings for service-connected posttraumatic stress disorder (PTSD), evaluated as 10 percent disabling from September 9, 2002, as 30 percent disabling from April 24, 2006, and as 50 percent disabling from August 21, 2007 to May 24, 2013.

2. Entitlement to a rating greater than 70 percent for service-connected neuropsychiatric impairment due to Parkinson's disease, and PTSD, from May 24, 2013 to March 5, 2015.

3. Whether a timely substantive appeal was filed with respect to the effective date of September 9, 2002 assigned for the award of service connection for PTSD in a September 2005 rating decision. 

4. Entitlement to a total disability rating based upon individual unemployability (TDIU) due to service-connected PTSD, prior to May 24, 2013, to include on an extra-schedular basis pursuant to 38 C.F.R. § 4.16(b).


REPRESENTATION

Veteran represented by: Francisca Santiago, Attorney


WITNESS AT HEARING ON APPEAL

Veteran


ATTORNEY FOR THE BOARD

K. K. Buckley, Counsel


INTRODUCTION

The Veteran served on active duty from February 1959 to July 1972. Service in the Republic of Vietnam is indicated by the record. The Veteran is the recipient of the Combat Infantry Badge.

In August 2005, the Board of Veterans' Appeals (Board) issued a decision in which it determined that the criteria for service connection for PTSD were met.

This appeal to the Board arose from a September 2005 rating decision in which the RO implemented the Board's August 2005 decision to award service connection for PTSD and assigned an initial 10 percent rating, effective September 9, 2002. In May 2006, the Veteran filed a notice of disagreement (NOD) with the initial rating and effective date assigned. A statement of the case (SOC), pertaining to the initial 10 percent rating assigned for PTSD, was issued in October 2006, and the Veteran filed a substantive appeal (via a VA Form 9, Appeal to the Board of Veterans' Appeals) later that same month.

In December 2006, the RO issued the Veteran a separate SOC addressing his claim for an earlier effective date for the award of service connection for PTSD.

In February 2008, the Veteran testified during a Board videoconference hearing before the undersigned Veterans Law Judge (VLJ) at the RO; a transcript of that hearing is of record.

In May 2008, the Board remanded the claims then on appeal for further development. After accomplishing further action ( as reflected in May 2009, August 2009, and June 2016 supplemental statements of the case (SSOCs), the agency of original jurisdiction determined that the Veteran had not filed a timely substantive appeal as to his earlier effective date claim; the AOJ also continued to deny the higher rating claim. Thereafter, the matters were returned to the Board for further appellate consideration.

In a May 2009 decision, the RO granted a higher, initial 30 percent rating for service-connected PTSD from April 24, 2006. In a June 2016 rating decision, the RO granted a 50 percent rating for service-connected PTSD, from August 21, 2007. In the June 2016 decision the RO also, inter alia, combined the assigned rating for PTSD with service-connected neuropsychiatric manifestations due to Parkinson's disease, and granted a 70 percent rating from May 24, 2013 and a 100 percent rating from March 5, 2015.

As the PTSD claim on appeal emanates from a request for a higher initial rating following the award of service connection, the Board has characterized this claim in light of Fenderson v. West, 12 Vet. App. 119, 126 (1999) (distinguishing initial rating claims from claims for increased ratings for already service-connected disability). Moreover, although the RO awarded higher ratings for the Veteran's PTSD prior to May 24, 2013, and for combined psychiatric/neuropsychiatric impairment from that date up to March 5, 2015 (when a 100 percent rating was assigned), as higher ratings for psychiatric disability are available prior to March 5, 2013; the Board has now characterized that portion of the appeal addressing evaluation of psychiatric/neuropsychiatric impairment as encompassing the first and second matters set forth on the title page. See Fenderson, supra; AB v. Brown, 6 Vet. App. 35, 38 (1993).

As for the matter of entitlement to a TDIU, the Veteran has alleged that unemployability due to his service-connected PTSD. See the Veteran's statement dated July 2006; see also the Board hearing transcript dated February 2008. Hence, the Board has expanded the appeal to also encompass the matter of the Veteran's entitlement to a TDIU due to the disability for which higher ratings are sought, consistent with Rice v. Shinseki, 22 Vet. App. 447 (2009). Moreover, as explained below, the Board is herein assigning a 100 percent rating r neuropsychiatric impairment due to Parkinson's disease and PTSD from May 24, 2013; thus, the matter of the Veteran's entitlement to a TDIU due to service-connected PTSD is limited to the period from September 9, 2002 to May 24, 2013. 

In December 2016, the Vice Chairman of the Board granted a motion to advance this appeal on the Board's docket, pursuant to 38 U.S.C.A. § 7017 (a)(2)(C) (West 2014) and 38 C.F.R. § 20.900 (c) (2016).

This appeal is now being processed utilizing the paperless, electronic Veterans Benefits Management System (VBMS) and Virtual VA claims processing systems.

The Board's decisions addressing the evaluation of service-connected psychiatric/neuropsychiatric impairment, as well as the claim involving timeliness of the appeal of the effective date assigned for the award of service connection for PTSD, are set forth below. The claim for a TDIU due to service-connected PTSD, prior to May 24, 2013, is addressed in the remand following the order; this matter is being remanded to the agency of original jurisdiction (AOJ). VA will notify the Veteran when further action, on his part, is required.


FINDINGS OF FACT

1. All notification and development actions needed to fairly adjudicate each matter herein decided have been accomplished.

2. From the September 9, 2002 effective date of the award of service connection for PTSD to August 21, 2007, the Veteran's psychiatric symptoms included difficulty sleeping, depressed mood, suspiciousness, nightmares and flashbacks, difficulty concentrating with mildly impaired memory, and social isolation; collectively, these symptoms are of the type and extent, frequency, or severity (as appropriate) that suggest no more than occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily with routine behavior, self-care, and conversation normal).

3. For the period from August 21, 2007 to May 24, 2013, the Veteran's psychiatric symptoms included anxiety, depressed mood, suspiciousness, sleep impairment, anger and irritability, mildly impaired memory, loss of interest in activities, difficulty concentrating, disturbance of mood, and social isolation; collectively, these symptoms are of the type and extent, frequency or severity (as appropriate) that are indicative of no more than occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily with routine behavior, self-care, and conversation normal).

4. Since May 24, 2013, the Veteran's service-connected psychiatric symptoms have included cognitive impairment and dementia, speech changes, depression, anxiety, poor orientation to time and place, impaired memory for recent events, poor concentration and attention, poor insight and judgment, irrelevant thought process, and mild psychomotor retardation; collectively, these symptoms that more closely approximate total occupational and social impairment.

5. The schedular criteria are adequate to rate the Veteran's service-connected psychiatric/neuropsychiatric impairment at all pertinent points.

6. In a September 2005 rating decision, the RO implemented the Board's August 2005 award of service connection for PTSD and assigned an initial, 10 percent disability rating, effective September 9, 2002; the RO notified the Veteran of its decision, and of his appellate rights, in a September 2005 letter.

7. In May 2006, the Veteran filed a NOD with respect to the September 2005 rating decision in which he disagreed with both the assigned disability rating and effective date; in December 2006, the RO issued a SOC addressing the assigned effective date for the award of service connection for PTSD and mailed the SOC and accompanying notice letter to the Veteran.

8. No document was received within the 60-day period following the issuance of the December 2006 SOC that can be construed as a timely substantive appeal or a timely request for extension of time to file a substantive appeal, with respect to the assigned effective date of the award of service connection for PTSD. 


CONCLUSIONS OF LAW

1. Resolving all reasonable doubt in the Veteran's favor, the criteria for an initial 30 percent but no higher rating ,for PTSD, from September 9, 2002, to April 24, 2006, are met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.321, 4.1, 4.3, 4.7, 4.126, 4.130, Diagnostic Code 9411 (2016).

2. The criteria for a rating in excess of 30 percent for PTSD, from April 24, 2006 to August 21, 2007, are not met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.321, 4.1, 4.3, 4.7, 4.126, 4.130, Diagnostic Code 9411 (2016).

3. The criteria for a rating in excess of 50 percent for PTSD, from August 21, 2007 to May 24, 2013, are not met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.321, 4.1, 4.3, 4.7, 4.126, 4.130, Diagnostic Code 9411 (2016).

4. Resolving all reasonable doubt in the Veteran's favor, the criteria for a 100 percent rating for neuropsychiatric impairment due to Parkinson's disease and PTSD, from May 24, 2013 ,are met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.321, 4.1, 4.3, 4.7, 4.126, 4.130, Diagnostic Codes 9411, 9434 (2016).

5. The Veteran did not perfect a timely appeal with respect to the effective date for the award of service connection for PTSD assigned in the September 2005 rating decision. 38 U.S.C.A. §§ 7105, 7108 (West 2014); 38 C.F.R. §§ 20.200, 20.202, 20.300, 20.302, 20.303, 20.305 (2015).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Due Process Considerations

The Veterans Claims Assistance Act of 2000 (VCAA), Pub. L. No. 106-475, 114 Stat. 2096 (Nov. 9, 2000) (codified at 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, and 5126 (West 2014)) includes enhanced duties to notify and assist claimants for VA benefits. VA regulations implementing the VCAA were codified as amended at 38 C.F.R. §§ 3.102, 3.156(a), 3.159, and 3.326(a) (2015). 

At the outset, the Board notes that, as regards the matter of the timeliness of the appeal regarding the assigned effective date for the award of service connection for PTSD, the Veteran has been advised of the bases of the denial of his claim, and afforded the opportunity to present information and evidence pertinent to the claim. The Board finds that these actions satisfy any fundamental due process owed the Veteran. Nevertheless, as will be explained below, the claim on appeal lacks legal merit. As the law, and not the facts, is dispositive of the claim, the duties to notify and assist imposed by the VCAA are not applicable. See Mason v. Principi, 16 Vet. App. 129, 132 (2002); see also Manning v. Principi, 16 Vet. App. 534, 542-543 (2002) (the provisions of the VCAA have no effect on an appeal where the law, and not the underlying facts or development of the facts are dispositive in a matter).

As for the evaluations assigned for psychiatric and neuropsychiatric impairment, notice requirements under the VCAA essentially require VA to notify a claimant of any evidence that is necessary to substantiate the claim(s), as well as the evidence that VA will attempt to obtain and which evidence he or she is responsible for providing. See, e.g., Quartuccio v. Principi, 16 Vet. App. 183 (2002) (addressing the duties imposed by 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b)). As delineated in Pelegrini v. Principi, 18 Vet. App. 112 (2004), after a substantially complete application for benefits is received, proper VCAA notice must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim(s); (2) that VA will seek to provide; (3) that the claimant is expected to provide; and (4) must ask the claimant to provide any evidence in her or his possession that pertains to the claim(s), in accordance with 38 C.F.R. § 3.159(b)(1). 

The Board notes that, effective May 30, 2008, 38 C.F.R. § 3.159 has been revised, in part. See 73 Fed. Reg. 23,353 - 23,356 (April 30, 2008). Notably, the final rule removes the third sentence of 38 C.F.R. § 3.159(b)(1), which had stated that VA will request that a claimant provide any pertinent evidence in his or her possession. 

In rating cases, a claimant must be provided with information pertaining to assignment of disability ratings (to include the rating criteria for all higher ratings for a disability), as well as information regarding the effective date that may be assigned. Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). 

Here, the Veteran was afforded appropriate notice in connection with his claim for service connection for PTSD, As for the rating claims-which emanated from the Veteran's disagreement with the initial rating assigned following the award of service connection for PTSD-no additional VCAA notice for this downstream issue. Once a claim for service connection has been substantiated, the filing of a notice of disagreement with the rating of the disability does not trigger additional § 5103(a) notice. See Dunlap v. Nicholson, 21 Vet. App. 112 (2007); Dingess v. Nicholson, 19 Vet. App. 473,490-491 (2006). ; In any event, the SOC and SSOCs of record reflect that the Veteran has been notified of the criteria for evaluating his psychiatric/neuropsychiatric impairment at various points throughout the pendency of the appeal, followed by periods for response. 

Moreover, neither the Veteran nor his attorney has alleged or demonstrated any prejudice with regard to the content or timing of the notice provided. See Shinseki v. Sanders, 129 S. Ct. 1696 (2009) (reversing prior case law imposing a presumption of prejudice on any notice deficiency, and clarifying that the burden of showing that an error is harmful, or prejudicial, falls upon the party attacking the agency's determination); Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006).

The record also reflects that VA has made reasonable efforts to obtain or to assist in obtaining all relevant records pertinent to the matters herein decided. Pertinent evidence associated with the claims file consists of the Veteran's VA and private treatment records, as well as the reports of January 2004, May 2009, and March 2015 VA psychiatric examinations. Also of record and considered in connection with the appeal are various statements submitted by the Veteran and his attorney on his behalf. The Board finds that no additional AOJ action to further develop the record in connection with any claim, prior to appellate consideration, is required. 

As for the Board hearing, in Bryant v. Shinseki, 23 Vet. App. 488 (2010), the United States Court of Appeals for Veterans Claims (Court) held that 38 C.F.R. § 3.103(c)(2) requires that the RO Decision Review Officer or VLJ, who chairs a hearing, fulfill two duties: (1) to fully explain the issues and (2) to suggest the submission of evidence that may have been overlooked. Bryant v. Shinseki, 23 Vet. App. 488 (2010). In this case, the Board finds that there has been substantial compliance with the duties set forth in 38 C.F.R. 3.103(c)(2), and that the hearing was legally sufficient.

Here, during the Board hearing, the undersigned identified the issues on appeal, to include the matters decided herein. Also, information was solicited regarding the Veteran's current symptoms, his in-service experiences, and the existence of any outstanding medical records pertinent to the severity of his service-connected PTSD. Therefore, not only were the issues "explained . . . in terms of the scope of the claim for benefits," but "the outstanding issues material to substantiating the claim" were also fully explained. See Bryant, 23 Vet. App. at 497. Although the undersigned did not explicitly suggest the submission of any specific, additional evidence, on these facts, such omission was harmless, as the Board sought additional development of the claim following the hearing, and additional pertinent evidence was subsequently added to the record.

As for the May 2008 remand, the Board finds that the AOJ has complied with the prior remand directives, to the extent possible, with respect to the claims decided herein. See Stegall v. West, 11 Vet. App. 268 (1998) (holding that a remand confers on the claimant, as a matter of law, the right to compliance with the remand order). The Veteran's VA treatment records dated from September 2006 to June 2016 have been associated with the claims file. In addition, in the June 2016 SSOC, the RO adjudicated the issue of whether a timely appeal had been perfected as to the denial of an earlier effective date for the grant of service connection for PTSD. Also, the Veteran was examined in May 2009 and March 2015 for purposes of assessing the severity of his service-connected PTSD.

In summary, the duties imposed by the VCAA have been considered and satisfied. The Veteran has been notified and made aware of the evidence needed to substantiate the claims, the avenues through which he might obtain such evidence, and the allocation of responsibilities between himself and VA in obtaining such evidence. There is no additional notice that should be provided, nor is there any indication that there is additional existing evidence to obtain or development required to create any additional evidence to be considered in connection with the claim. Consequently, any error in the sequence of events or content of the notice is not shown to prejudice the Veteran or to have any effect on the appeal. Any such error is deemed harmless and does not preclude appellate consideration of the matter herein decided, at this juncture. See Mayfield v. Nicholson, 20 Vet. App.539, 543 (2006) (rejecting the argument that the Board lacks authority to consider harmless error); see also ATD Corp. v. Lydall, Inc., 159 F.3d 534, 549 (Fed. Cir. 1998).


II. Higher Ratings

A. Factual background

In September 2002, the Veteran filed a claim of entitlement to service connection for PTSD. In a January 2003 statement, he asserted that PTSD has impaired his social and occupational adaptability.

An August 2003 private evaluation report from Dr. A.V. documented the Veteran's psychiatric symptoms including difficulty talking about his time in the Republic of Vietnam, flashbacks, tension/tremors, depression, feelings of guilt, exaggerated startle response, and intense irritability. Dr. A.V. noted that the Veteran "gets along very well with his family." Dr. A.V. further stated that the Veteran was able to perform his professional duties as a psychologist and vocational specialist prior to his retirement in 1997. The Veteran's social life is "very limited except for social meetings with his children and spouse." The Veteran is able to take care of all of his personal needs. However, Dr. A.V. stated that the Veteran's behavior does not appear normal as he shows hyperactivity, agitation, and tension. The Veteran appeared very sad. His attitude was friendly, cooperative, and attentive. His affect was distant, and his mood was depressed and anxious. The Veteran reported "frequent irritability/anger episodes." Dr. A.V. reported that the Veteran's speech was garrulous, rapid, and pressurized; he explained that the Veteran becomes tangential, irrelevant, and circumstantial because of anxiety. He also experienced crying spells during the interview. He did not endorse hallucinations, delusions, or depersonalization. Dr. A.V. stated that the Veteran's thought process was loose because of anxiety, and his thought content was "full of guilt and fear." The Veteran was hyper-excitable. He was well-oriented. His memory for recent events was intact, but was impaired as to remote events such as his experiences in Vietnam. His concentration was reduced and impaired. The Veteran's insight was also reduced. Dr. A.V. reported that the Veteran exhibited moderate PTSD. A GAF of 82 was assigned. Dr. A.V. opined, "[t]his Veteran has managed to curb and control his symptoms through intense self efforts, but in the last three to four years his defenses have crumbled."

The Veteran was afforded a VA examination in January 2004 at which time he reported no psychiatric treatment, aside from the August 2003 evaluation. He stated that "in the last year, he has been feeling sad [and] depressed with irritability, occasional insomnia, occasional anxiety, and occasional tension." The Veteran occasionally dreams about his experiences in Vietnam, but these dreams do not interfere with his daily living activities. The Veteran "was not observed to be severely anxious, distressed, or depressed [when] describing his experience in Vietnam." During his employment, the Veteran was a psychologist and now works part-time as a psychology professor. He has been married for 43 years and has four adult children. The Veteran reported no marital problems. He also did not report any interpersonal problems in his social relationships. The examiner noted that the Veteran was appropriately dressed with adequate hygiene. His speech was spontaneous, and he demonstrated no psychomotor retardation or agitation. His thought process was coherent and logical. He had no looseness of association, and there was no evidence of disorganized speech. He had no delusions or hallucinations. The Veteran denied phobias, obsessions, or panic attacks. He denied suicidal ideation. His mood was depressed, and his affect was broad and appropriate. The Veteran was well-oriented and his memory was intact. His judgment was good and his insight was adequate. The examiner reported that the Veteran did not meet the DSM-IV criteria for PTSD; rather, a diagnosis of depressive disorder, NOS, was indicated. A GAF of 70 was assigned. The examiner explained that the Veteran "has some mild symptoms, but [is] functioning pretty well with meaningful interpersonal relationships."

In an April 2004 statement, the Veteran reported that he is depressed and has poor sleeping habits. He endorsed nightmares, intrusive thoughts, anxiety reactions, and rage. He stated, "I do not let anyone walk behind me at any time. I hate fireworks, helicopters passing overhead, and loud noises; it takes me back into the war." He further explained, "I become violent for no apparent reason and my wife and children have become the victims of my out-[of]-control rage." He also reported a difficulty trusting his employer. In an August 2004 VA Form 9 (Appeal to the Board of Veterans' Appeals), the Veteran reported poor sleeping habits, rage, nightmares, suicidal tendencies, intrusive thoughts, and guilt. In a December 2004 statement, the Veteran endorsed personal and family difficulties. He stated that "[n]ightmares, guilt, feelings of anger and anxiety, crying spells, etc., have become part of my way of life."

VA treatment records dated in August 2004 noted the Veteran's anxiety. It was further indicated that he did not have suicidal or homicidal ideation, delusions, or hallucinations. A GAF of 70 was assigned.

In a May 2005 review and supplemental report, Dr. A.V. stated, "[f]rom the new available evidence, it is clearly confirmed that this Veteran has continued to suffer from emotional distress, anxiety, depression, insomnia, and other PTSD-like symptoms." Dr. A.V. continued, "[h]e has required [psychotherapy], anxiolytic medication support, and catharsis coupled with emotional support to alleviate his psychological symptoms."

An April 2006 VA psychiatric note documents the Veteran's report of frequent nightmares. He avoids television and places that remind him of his war experiences. He reported that he is more irritable during rainy weather because it reminds him of Vietnam. He had poor concentration and difficulty falling and staying asleep. The Veteran reported feelings of guilt, and says that he cries alone. His mood was sad and his affect was depressed. He had no suicidal or homicidal ideation. He did not endorse feelings of worthlessness or hopelessness. He was well-oriented. He demonstrated fair attention and concentration, but superficial insight. A May 2007 VA treatment record documented the Veteran's report of nightmares, isolation, and irritability. It was noted, "lately, he has been sad, depressed, and anxious with crying spells, unable to perform in his usual daily activities because he has no energy or motivation." The Veteran denied suicidal or homicidal ideation. He had good personal hygiene, and was talkative and cooperative. His mood was depressed and anxious. He was well-oriented and exhibited fair memory. His concentration and attention were intact. An August 2007 VA psychiatric note documented the Veteran's report of depressed mood, decreased energy, and preference for social isolation. He demonstrated good personal hygiene. He was talkative, cooperative, and polite. His speech was coherent, relevant, and logical. His mood was sad and depressed; his affect was anxious. The Veteran denied suicidal or homicidal ideation. He was well-oriented. He had fair attention and decreased concentration. His memory was fair. A diagnosis of PTSD with strong anxiety and depressed component was indicated. A GAF of 55 was assigned.

During the February 2008 Board hearing, the Veteran testified that he was primarily unemployed, although he did teach a few isolated classes. See the transcript, pgs. 6-8. He reported nightmares and stated that he sleeps three to five hours per night. Id. at pg. 10. He testified that he has a good relationship with his wife, but she cannot touch him in his sleep, as such they must sleep in separate beds. Id. at pg. 17. The Veteran additionally endorsed difficulty with concentration, flashbacks, re-experiencing his trauma, hypervigilance, exaggerated startle response, anxiety, depression, and social impairment. Id. at pg. 21.

VA treatment records dated in March 2008 document the Veteran's PTSD symptoms, including recurring intrusive thoughts, nightmares, irritability, hypervigilance, social isolation, abnormal sleep pattern, and poor social functioning. A July 2008 VA treatment record notes the Veteran's continuing PTSD and depression, status-post kidney surgery one month prior. It was noted that the Veteran has no ability to work. A GAF of 55 was assigned.

On May 2009 VA examination, the Veteran reported that he continued to be married and had a relationship with his four adult children. He reported, "[n]o specific problems in relationships with others, although he reports being mostly at home, and with little participation in social activities." The Veteran explained that, at present, he must help his wife with household chores due to her own physical and mental problems. He indicated that he likes to exercise in his own home. He denied suicidal or homicidal ideation. He also denied a history of violence or assaultiveness. 

The examiner noted that the Veteran was casually dressed and groomed. He was alert and aware, but tearful at times. His affect was appropriate. His mood was anxious and depressed. His judgment and attention were intact, and he was well-oriented. The examiner noted that the Veteran was preoccupied with one or two topics. However, he did not exhibit delusions or hallucinations. He had no obsessive/ritualistic behavior. The Veteran denied panic attacks. He reported good impulse control. The examiner noted that the Veteran is able to maintain minimum personal hygiene. The examiner also stated that the Veteran has no problems with activities of daily living. His memory is intact. The Veteran endorsed avoidance, markedly diminished interest or participation in significant activities, difficulty falling or staying asleep, irritability or outbursts of anger, hypervigilance, and exaggerated startle response. The examiner reported, "[t]his Veteran has adequate memory and intellectual functioning with good judgment, and no difficulties in financial management." A diagnosis of PTSD with depressive features was indicated. A GAF of 55 was assigned.

The May 2009 VA examiner explained,

The Veteran's symptoms are found to be moderately severe due to the variability in the occurrence and severity of his PTSD and depressive symptoms but the Veteran being able to maintain interpersonal relations, not having impairment of judgment, intellect or memory, other than some decreased concentration, with no presence of suicidal or homicidal ideas, preserved impulse control, no panic attacks, adequate speech and thought process, no delusions or hallucinations ever reported or described, and able to maintain adequate care of himself and perform activities of daily living.

The May 2009 VA examiner also thoroughly reviewed the Veteran's treatment history and opined that the Veteran's treatment, examination, and evaluation records "do not reveal any significant increase in the severity of [the] Veteran's PTSD, as the symptoms of this condition continue to be reported with some ups and downs in either anxiety of depression, but mostly related to specific situations and events the Veteran has had to deal with" to include his own health problems and those of his wife. The examiner further stated that the Veteran "has shown depressive symptoms and feelings of worthlessness as reported in the history and present interview, mostly related to his medical problems . . . and also in reaction to recurrent memories and thoughts about experiences in Vietnam." The examiner determined that there was no total occupational and social impairment due to PTSD.

VA treatment records dated in June 2009 note the Veteran's increased anxiety due to a health situation. He stated that he has two friends who provide support. He exhibited fair personal hygiene. The Veteran's mood was sad; his affect was depressed and anxious. He denied suicidal ideation. He endorsed low self-esteem. He had fair attention and memory, but decreased concentration. A GAF of 55 was indicated. A September 2009 VA social work note indicated that the Veteran "shows guilty feelings regard[ing] his wife's mental health as a result of his aggressive behavior and emotional abuses after military service."

A January 2011 VA examination for Parkinson's disease notes that the Veteran had no mental manifestations due to Parkinson's disease or its treatment.

In an April 2013 VA psychiatric note, the treatment provider indicated that the Veteran's anxiety and hypervigilance have increased after he had a recent stroke episode. The Veteran endorsed nightmares and increasingly frequent intrusive thoughts. He reported that he was able to achieve four to five hours of intermittent sleep per night. He experiences episodes of anxiety with hypervigilance of fear that something might happen, sweaty hands, and heart palpations. The Veteran's son helps him. The Veteran denied suicidal and homicidal ideation. He exhibited fair personal hygiene. He was talkative and cooperative. His speech was coherent, relevant, and logical. His mood was anxious, and his affect was appropriate. He denied hallucinations or delusions.

The report of a July 2013 VA psychiatry consultation indicates that the Veteran had suffered a stroke in January and had developed memory problems and functional impairment. The Veteran denied agitation or aggressive episodes at home. He exhibited mild psychomotor retardation. His affect was appropriate and restricted. His thought process was coherent, but irrelevant at times. He had no suicidal or homicidal thoughts. He did not endorse obsessions or compulsions. The Veteran was oriented in person, partially in time, and not in place. His immediate and remote memory was intact, but his recent memory was impaired. He exhibited poor concentration and attention, as well as poor insight and judgment. The treatment provider stated that the Veteran presented "with worsening of cognitive impairment status post-surgery. Acute onset change in mental status from patient's baseline with fluctuating course, difficulty focusing attention, disorganized thinking, and altered level of consciousness," which is consistent with a delirium state. A GAF of 50 was indicated.

The report of a December 2013 VA examination for Parkinson's disease notes moderate speech changes, moderate depression and mild cognitive impairment/dementia due to Parkinson's disease. Moderate sleep disturbance was also indicated. The examiner stated that "[t]he Veteran is unable to perform most of his activities of daily living. He is totally unable to hold any type of job" as a result of his Parkinson's disease. The examiner further stated, "[w]hen compared to 2011 neurological evaluation, this Veteran s condition has definitely worsened."

On March 2015 VA examination, the Veteran endorsed avoidance, persistent and exaggerated negative beliefs or expectations about oneself, others, or the world. He also reported markedly diminished interest or participation in significant activities, hypervigilance, exaggerated startle response, and sleep disturbance. The Veteran also reported depressed mood, anxiety, near-continuous panic or depression affecting the ability to function independently, appropriately and effectively, chronic sleep impairment, disturbance of motivation and mood, neglect of personal appearance and hygiene, intermittent inability to perform activities of daily living including maintenance of minimum personal hygiene. The Veteran was anxious and despondent with depressed mood. He reported nightmares and a continuously depressed mood. The examiner determined that the Veteran's psychological symptoms resulted in total occupational and social impairment.

In a March 2015 addendum opinion, the prior examiner stated, "[i]t is undersigned's opinion that PTSD condition renders Veteran totally unable to obtain or maintain a substantially gainful employment. He is unable to complete normal workday tasks, maintain adequate relationships with peers and/or clients, or to keep a specific schedule at any gainful job."

B. Analysis

Disability evaluations are determined by the application of VA's Schedule for Rating Disabilities, which is based on average impairment of earning capacity resulting from a service-connected disability. 38 U.S.C.A. § 1155; 38 C.F.R. Part 4. Where there is a question as to which of two ratings shall be applied, the higher rating will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. After careful consideration of the evidence, any reasonable doubt remaining is resolved in favor of the veteran. 38 C.F.R. § 4.3.

The Veteran's entire history is to be considered when making disability evaluations. See generally 38 C.F.R. § 4.1; Schafrath v. Derwinski, 1 Vet. App. 589 (1995). Where an increase in the level of a service-connected disability is at issue, the primary concern is the present level of disability. Francisco v. Brown, 7 Vet. App. 55 (1994). However, where, as here, the appeal emanates from a request for higher rating following the award of service connection, evaluation of the medical evidence since the effective date of the award, and consideration of the appropriateness of staged rating (assignment of different ratings for distinct periods of time, based on the facts found) is required. Fenderson, 12 Vet. App. at 126 
Historically, the Veteran was granted service connection for PTSD in a September 2005 rating decision, the subject of this appeal. At that time, the RO assigned a 10 percent disability rating, effective September 9, 2002. In a May 2009 rating decision, the RO increased the assigned rating to 30 percent from April 24, 2006. In a June 2016 rating decision, the RO increased the rating assigned for PTSD to 50 percent from August 21, 2007 and then combined the assigned rating with service-connected neuropsychiatric manifestations due to Parkinson's disease, granting a 70 percent rating from May 24, 2013 and a 100 percent rating from March 5, 2015.

The RO has assigned ratings for the Veteran's PTSD under 38 U.S.C.A. § 4.130, Diagnostic Code 9411 prior to May 24, 2013 and under Diagnostic Codes 8004-9434 from May 24, 2013. However, the actual criteria for rating psychiatric disabilities other than eating disorders are set forth in a General Rating Formula for Mental Disorders (General Rating Formula). See 38 C.F.R. § 4.130.

Under the General Rating Formula, a 10 percent rating is assigned for occupational and social impairment due to mild or transient symptoms which decrease work efficiency and ability to perform occupational tasks only during periods of significant stress, or symptoms controlled by continuous medication.

A 30 percent rating is assigned for occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal), due to such symptoms as: depressed mood, anxiety, suspiciousness, panic attacks (weekly or less often), chronic sleep impairment, and mild memory loss (such as forgetting names, directions, recent events).

A 50 percent rating is warranted for occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short- and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; and difficulty in establishing and maintaining effective work and social relationships. 

To warrant the next higher, 70 percent rating, the evidence must show occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work like setting); and an inability to establish and maintain effective relationships. 

A 100 percent rating is warranted for total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; and memory loss for names of close relatives, own occupation, or own name.

As the United States Court of Appeals for the Federal Circuit has explained, evaluation under 38 C.F.R. § 4.130 is "symptom-driven," meaning that "symptomatology should be the fact-finder's primary focus when deciding entitlement to a given disability rating" under that regulation. Vazquez-Claudio v. Shinseki, 713 F.3d 112, 116-17 (Fed. Cir. 2013). The symptoms listed are not exhaustive, but rather "serve as examples of the type and degree of symptoms, or their effects, that would justify a particular rating." Mauerhan v. Principi, 16 Vet. App. 436, 442 (2002). In the context of determining whether a higher disability evaluation is warranted, the analysis requires considering "not only the presence of certain symptoms[,] but also that those symptoms have caused occupational and social impairment in most of the referenced areas"-i.e., "the regulation ... requires an ultimate factual conclusion as to the Veteran's level of impairment in most areas." Vazquez-Claudio, 713 F.3d at 117-18; 38 C.F.R. § 4.130, Diagnostic Code 9411.

When evaluating a mental disorder, the Board must consider the "frequency, severity, and duration of psychiatric symptoms, the length of remissions, and the Veteran's capacity for adjustment during periods of remission," and must also "assign an evaluation based on all the evidence of record that bears on occupational and social impairment rather than solely on the examiner's assessment of the level of disability at the moment of the examination." 38 C.F.R. § 4.126(a). Further, when evaluating the level of disability from a mental disorder, the extent of social impairment is considered, but the rating cannot be assigned solely on the basis of social impairment. 38 C.F.R. § 4.126(b).

Psychiatric examinations frequently include assignment of a Global Assessment of Functioning (GAF) score. According to the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition (DSM-IV) the GAF is a scale reflecting the "psychological, social, and occupational functioning on a hypothetical continuum of mental health illness". There is no question that the GAF score and interpretations of the score are important considerations in rating a psychiatric disability. See e.g., Richard v. Brown, 9 Vet. App. 266, 267 (1996); Carpenter v. Brown, 8 Vet. App. 240 (1995). However, the GAF score assigned in a case, like an examiner's assessment of the severity of a condition, is not dispositive of the evaluation issue; rather, the GAF score must be considered in light of the actual symptoms of a veteran's disorder, which provide the primary basis for the rating assigned. See 38 C.F.R. § 4.126 (a).

The Board notes, parenthetically, that VA recently updated references in its regulations to the Fifth Edition of the DSM (DSM-5) which, among other things, eliminates GAF scores. However, the changes do not apply to claims, such as this one, that were certified for appeal to the Board on or before August 4, 2014. See 80 Fed. Reg. 14,308 (March 19, 2015) (Applicability Date).

1. Period prior to August 21, 2007.

Considering the pertinent evidence of record in light of the applicable rating criteria and rating considerations referenced above, the Board finds that with resolution of all reasonable doubt in the Veteran's favor, an initial 30 percent, but no higher, rating for PTSD, for the entire period prior to August 21, 2007, is warranted.

At the outset, the Board notes that, in addition to service-connected PTSD, the medical evidence reflected a diagnosis of depressive disorder. Where it is not possible to distinguish the effects of nonservice-connected conditions from those of a service-connected condition, the reasonable doubt doctrine dictates that all symptoms be attributed to the Veteran's service-connected disability. See Mittleider v. West, 11 Vet. App. 181 (1998). There is no evidence to clearly distinguish the symptoms of the Veteran's service-connected PTSD from his other diagnosed nonservice-connected psychiatric disability. Thus, the Board will attribute all of the Veteran's psychiatric symptoms to PTSD for the purposes of assessing the severity of that disability. Id.

The above-described evidence reflects that, for the period prior to August 21, 2007, the Veteran's psychiatric symptoms included anxiety, depressed mood, suspiciousness, sleep impairment, exaggerated startle response, hypervigilance, anger and irritability, flashbacks, and isolation. Impairment of social functioning had been indicated by the Veteran's preference for social isolation. Furthermore, he had occupational limitations, as indicated by his preference for isolation and problems sleeping.

Collectively, these symptoms are of the type and extent, frequency, or severity (as appropriate), to indicate no more than the level of impairment warranting a 30 percent rating. While such symptoms are shown to have resulted in occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks, the Veteran was generally able to function satisfactorily with routine behavior, self-care, and normal conversation.

The Board further finds that at no pertinent point prior to August 21, 2007 did the Veteran's PTSD symptoms and resulting impairment meet, or more nearly approximated, the level of impairment contemplated in the next higher, 50 percent rating. The pertinent evidence showed normal speech, infrequent panic attacks (less than once a week), no difficulty in understanding complex commands, and no impairment in thinking - symptoms listed in the rating criteria as indicative of the level of impairment for which the 50 percent rating is assignable. Additionally, the evidence reflects impaired affect, and disturbances in mood, in the form of anger and irritability. However, the Veteran's impaired affect and disturbances in mood are the only identified symptoms listed among those of the type, extent and frequency or severity, as appropriate, for the 50 percent rating.

The Board acknowledges that the evidence of record supports a finding that the Veteran had problems in establishing and maintaining relationships. However, it was noted that the Veteran was functioning well occupationally and had a decent marriage. The Veteran complained of being socially withdrawn and prone to isolation, but he also reported that he enjoys spending time with his wife and adult children. These activities indicate some ability to establish and maintain relationships, despite the Veteran's other symptomatology. Therefore, the Board finds that the weight of the evidence supports a finding that, for the period prior to August 21, 2007, the level of impairment resulting from the Veteran's psychiatric symptoms did not meet, or more nearly approximate, the level of impairment required for the 50 percent rating criteria. This is especially true when considering the effect of the Veteran's symptoms on occupational and social functioning. As noted above, the Veteran was noted to be married, taught classes on a part-time basis, and had contact with his children. Furthermore, although he only maintained part-time employment during this period, the evidence does not show that the Veteran's PTSD precluded employment.

Under these circumstances, the Board finds that the Veteran was not shown to have experienced symptoms of the type, and extent, frequency or severity, as appropriate, to result in reduced reliability and productivity in occupational and social functioning as required for the 50 percent rating. As the criteria for the next-higher, 50 percent rating for the period under consideration are not met, it logically follows that the criteria for any higher rating (70 or 100 percent)-which require a showing of more significant impairment-likewise are not met.

The Board also points out that the assigned GAF scores of 55 to 82 are consistent with no more than the level of impairment contemplated in the 30 percent rating herein assigned. Under the DSM-IV, GAF scores ranging from 81 to 90 reflect absent or minimal symptoms (e.g., mild anxiety before an exam), good functioning in all areas, interested and involved in a wide range of activities, socially effective, generally satisfied with life, no more than everyday problems or concerns (e.g., an occasional argument with family members). GAF scores ranging from 71 to 80 reflect that if symptoms are present they are transient and expectable reactions to psychosocial stressors (e.g., difficulty concentrating after family argument); no more than slight impairment in social, occupational, or school functioning (e.g., temporarily falling behind in school work). GAF scores ranging from 61 to 70 reflect some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, and has some meaningful interpersonal relationships. Scores ranging from 51 to 60 reflect more moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). As such scores appear to indicate minimal to moderate impairment, which is consistent with the assignment of a 30 percent rating.

Accordingly, the Board finds that, resolving all reasonable doubt in the Veteran's favor, from the September 9, 2002 (effective date of the award of service connection) to August 21, 2007, the Veteran's PTSD resulted in psychiatric symptoms of the type or extent, frequency, or severity, as appropriate, to indicate than the level of impairment contemplated in the schedular 30 percent, but no higher, rating for PTSD herein assigned.

In reaching the above conclusions, the Board reiterates that the symptoms listed in the rating schedule under the criteria for the 30 percent rating, as well as higher 50 percent, 70 percent, and 100 percent ratings, are essentially examples of the type and degree of symptoms indicative of the level of impairment required for each such rating, and that the Veteran need not demonstrate those exact symptoms to warrant a higher rating. See Vazquez-Claudio v. Shinseki, 713 F.3d 112, 116-17 (Fed. Cir. 2013); Mauerhan, supra. However, as discussed above, the Board finds that the evidence of record simply does not show that the Veteran has manifested symptomatology that is of the type, extent, frequency, and severity to result in a level of impairment that meets, or more nearly approximates, the level of impairment contemplated by any higher rating under VA's rating schedule.

2. Period from August 21, 2007 to May 24, 2013.

As noted above, the Veteran has been assigned a 50 percent rating from August 21, 2007 to May 24, 2013. Based upon a review of the evidence of record, the Board finds that, for this period, the Veteran experienced such psychiatric symptoms as sleep disturbance, nightmares, irritability, hypervigilance, depression, anxiety, exaggerated startle response, and social isolation. Collectively, these symptoms are of the type and extent, severity, and/or frequency (as appropriate) indicative of no more than occupational and social impairment with reduced reliability and productivity-the level of impairment warranting a 50 percent rating.

The Board finds that at no point, from August 21, 2007 to May 24, 2013, did the Veteran's PTSD symptoms and resulting impairment met, or more nearly approximated, the level of impairment contemplated in the next higher, 70 percent rating. As indicated, under the rating formula, a 70 percent rating is assigned for occupational and social impairment with deficiencies in most areas due to symptoms such as intermittently illogical speech, near-continuous panic or depression affecting the ability to function independently, appropriately, and effectively, impaired impulse control (such as unprovoked irritability with periods of violence), spatial disorientation, neglect of personal appearance and hygiene, difficulty in adapting to stressful circumstances, and inability to establish and maintain effective relationships.

The Veteran consistently denied active suicidal and homicidal ideation to both treatment providers and VA examiners, and he was consistently found to not experience hallucinations or delusions. Further, from August 21, 2007 to May 24, 2013, the Veteran's speech was never illogical, obscure, circumstantial, or irrelevant. There is further no indication that any behavior resulted in any effect upon the Veteran's routine activities, or that his anxiety or depression was near-continuous or affected his ability to function independently. Mental status examinations from the applicable time period consistently found the Veteran to be alert and oriented to time, place, and person, and there was no indication that the Veteran neglected his personal appearance or hygiene.

Although the medical evidence of record clearly indicates that the Veteran suffered from problems associated with anger and irritability from August 21, 2007 to May 24, 2013, there is nothing to suggest that he was unable to control his impulses or was prone to periods of violence, such that his level of occupational and social impairment warranted a 70 percent rating. Further, to the extent that the Veteran's PTSD resulted in symptoms of social avoidance and isolation, the Board finds that such symptomatology is contemplated by the 50 percent rating herein assigned. He maintained a stable marriage throughout the period under consideration. Moreover, the Veteran did not identify any problems in his relationship with his adult children. In addition, a June 2009 treatment record noted that the Veteran maintained two supportive friendships.

While a VA treatment records dated in July 2008 indicates that the Veteran "has no ability to work", this notation was made in light of the Veteran's cancer treatment, including a right partial nephrectomy, which had taken place one month prior. As the Veteran's PTSD symptoms from August 21, 2007 to May 24, 2013, were not shown to be of the type and extent, frequency, and/or severity (as appropriate) to indicate occupational and social impairment with deficiencies in most areas such as work, school, family relations, judgment, thinking and mood-the level of impairment contemplated by the next higher, 70 percent disability rating-the Veteran's symptomatology also failed to rise to the level contemplated by the maximum 100 percent rating (which requires symptoms resulting in total occupational and social impairment).

The Board also notes that none of the GAFs assigned, alone, provides a rating for PTSD greater than 50 percent for the period in question. The Veteran was repeatedly assigned a GAF score of 55 during this period. See, e.g., VA treatment records dated in August 2007, July 2008, and June 2009, and VA examination report dated in May 2009. Under the DSM, scores ranging from 51 to 60 reflect more moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). As such scores appear to indicate moderate impairment-a level of impairment even less than that contemplated in the 50 percent rating-they clearly provide no basis for ant even higher rating under the General Rating Formula.

In reaching the above conclusions, the Board reiterates that the symptoms listed in the rating schedule under the criteria for the 50 percent rating, as well as higher 70 percent and 100 percent ratings, are essentially examples of the type and degree of symptoms indicative of the level of impairment required for each such rating, and that the Veteran need not demonstrate those exact symptoms to warrant a higher rating. See Vazquez-Claudio, 713 F.3d at 116-17; Mauerhan, supra. However, as discussed above, the Board finds that, for the period from August 21, 2007 to May 24, 2013, the evidence of record simply does not show that the Veteran manifested symptomatology that is of the type, extent, frequency, and severity to result in a level of impairment that meets, or more nearly approximates, the level of impairment contemplated by any higher rating under VA's rating schedule.

3. Period since May 24, 2013.

As described above, in the June 2016 rating decision, the RO combined the assigned rating for PTSD with neuropsychiatric manifestations due to Parkinson's disease, and granted a 70 percent rating from May 24, 2013 and a 100 percent rating from March 5, 2015. In consideration of the pertinent evidence of record in light of the applicable rating criteria and rating considerations referenced above, the Board finds that with resolution of all reasonable doubt in the Veteran's favor, the al 100 percent rating for neuropsychiatric impairment due to Parkinson's disease and PTSD is warranted from May 24, 2013.

The above-described evidence reflects that, since May 24, 2013, the Veteran's neuropsychiatric symptoms have manifested as irrelevant thought process, mild psychomotor retardation, impairment of recent memory, poor concentration and attention, and poor insight and judgment in addition to anxiety, depressed mood, suspiciousness, sleep impairment, exaggerated startle response, hypervigilance, anger and irritability, flashbacks, and isolation. The Veteran was not oriented in time or place, and presented with "difficulty focusing attention, disorganized thinking, and an altered level of consciousness" consistent with a delirium state. See the VA treatment records dated in July 2013. Moreover, as described above, a December 2013 VA examiner noted the Veteran's moderate speech changes, moderate depression and mild cognitive impairment/dementia due to Parkinson's disease. The examiner then stated, "[t]he Veteran is unable to perform most of his activities of daily living. He is totally unable to hold any type of job" as a result of his neuropsychiatric impairment.

Critically, although the Veteran does not meet all of the schedular criteria under the General Rating Schedule for the assignment of a total [100 percent] disability rating, the Board's inquiry is not necessarily limited to the criteria found in the VA rating schedule. See Mauerhan, supra (the criteria set forth in the rating formula for mental disorders do not constitute an exhaustive list of symptoms, but rather are examples of the type and degree of the symptoms, or their effects, that would justify a particular rating). As indicated above, based upon the July 2013 VA treatment record, as well as the findings of the December 2013 VA examiner, the evidence of record indicates that the Veteran's PTSD symptoms have resulted in his total social and occupational impairment. See Vazquez-Claudio, supra.

Accordingly, affording the Veteran the benefit of the doubt, the Board finds that the overall level of the Veteran's psychiatric symptomatology, being reflective of his major impairment in occupational and social functioning, approaches that which warrants the assignment of a 100 percent rating under the General Rating Formula from May 24, 2013. See 38 C.F.R. § 4.7. 
a. Other considerations.

The above determinations are based on consideration of pertinent provisions of VA's rating schedule. Additionally, the Board finds at no pertinent prior to May 24, 2013 was the Veteran's PTSD shown to be so exceptional or unusual to warrant the assignment of any higher rating on an extra-schedular basis prior to May 24, 2013. See 38 C.F.R. § 3.321(b)(1).

The threshold factor for extra-schedular consideration is a finding on the part of the RO or the Board that the evidence presents such an exceptional disability picture that the available schedular ratings for the service-connected disability at issue are inadequate. See Fisher v. Principi, 4 Vet. App. 57, 60 (1993). Therefore, initially, there must be a comparison between the level of severity and the symptomatology of the claimant's disability with the established criteria provided in the rating schedule for this disability. If the criteria reasonably describe the claimant's disability level and symptomatology, then the disability picture is contemplated by the rating schedule, the assigned rating is therefore adequate, and no referral for extra-schedular consideration is required. See VAOGCPREC 6-96 (Aug. 16, 1996); Thun v. Peake, 22 Vet. App. 111 (2008).

If the rating schedule does not contemplate the claimant's level of disability and symptomatology, and is found inadequate, the RO or Board must determine whether the claimant's exceptional disability picture exhibits other related factors such as those provided by the regulation as "governing norms" (including marked interference with employment and frequent periods of hospitalization). 38 C.F.R. § 3.321(b)(1). If so, then the case must be referred to the Under Secretary for Benefits or the Director of the Compensation and Pension Service for completion of the third step: a determination of whether, to accord justice, the claimant's disability picture requires the assignment of an extra-schedular rating. Thun, 22 Vet. App. 111.

In this case, the Board finds that schedular criteria are adequate to rate the Veteran's PTSD at all points prior to May 24, 2013. As discussed above, the Veteran's predominant subjective and objective psychiatric symptoms impact his overall social and occupational functioning. A comparison between the Veteran's symptoms and the criteria of the rating schedule indicates that the rating criteria reasonably describe his level of impairment. In this regard, all of the Veteran's psychiatric symptomatology is contemplated by the rating criteria, to include those symptoms which are not specifically enumerated. See Mauerhan, supra. Further, as noted, the rating schedule provides for higher ratings based on evidence demonstrating more severe impairment. Notably, there is no allegation or argument that, at any point prior to May 24, 2013, the schedular criteria are inadequate to rate the Veteran's PTSD.

The Board further notes that, in Johnson v. McDonald, 762 F.3d 1362, 1365-66 (Fed. Cir. 2014), the Federal Circuit held that "[t]he plain language of § 3.321(b)(1) provides for referral for extra-schedular consideration based on the collective impact of multiple disabilities." Here, however, all pertinent symptoms have been considered in evaluating the disability under consideration. Moreover, there is no evidence or argument that consideration of the combined effects of multiple disabilities is here at issue. See Yancy v. McDonald, 27 Vet. App. 484, 495 (Fed. Cir. 2016). As such, the holding in Johnson need not be addressed further.

As the threshold requirement for invoking the procedures set forth in 38 C.F.R. § 3.321(b)(1) is not met, referral of the matter of a higher rating at any point prior to May 24, 2013 extra-schedular consideration is not warranted. Id.; Bagwell v. Brown, 9 Vet. App. 337, 338-39 (1996); Floyd v. Brown, 9 Vet. App. 88, 96 (1996); Shipwash v. Brown, 8 Vet. App. 218, 227 (1995).

III. Timeliness of substantive appeal

Pursuant to applicable law and regulation, an appeal consists of a timely filed NOD in writing and, after a SOC has been furnished, a timely filed substantive appeal. 38 U.S.C.A. § 7105; 38 C.F.R. § 20.200.

A substantive appeal perfects the appeal to the Board and frames the issues to be considered. Myers v. Derwinski, 1 Vet. App. 127, 129 (1991). A substantive appeal consists of a properly completed VA Form 9 (Appeal to Board of Veterans' Appeals) or other correspondence containing the necessary information. The substantive appeal must also indicate what issues are being perfected. Proper completion and filing of a substantive appeal are the last actions a Veteran needs to take to perfect an appeal. 38 C.F.R. § 20.202.

A substantive appeal must be filed within sixty days from the date that the RO mails the SOC to the Veteran, or within the remainder of the one-year period from the date of mailing of the notification of the determination being appealed, whichever comes later. 38 U.S.C.A. § 7105; 38 C.F.R. § 20.302. Where a Veteran files a timely NOD but fails to timely file a substantive appeal, the appeal is untimely. See Roy v. Brown, 5 Vet. App. 554, 556 (1993).

An extension of the sixty-day period for filing a substantive appeal may be granted for good cause. A request for such an extension must be made in writing and must be made prior to expiration of the time limit for filing the substantive appeal. 38 C.F.R. § 20.303.

Importantly, the failure to timely file a substantive appeal is not an absolute bar to the Board's jurisdiction and does not automatically foreclose an appeal. Rowell v. Principi, 4 Vet. App. 9, 17 (1993). In Rowell, the appellant filed an untimely appeal, but as the RO accepted the appeal, it appeared to have treated the appeal as timely and thus there was "no problem, with regard to the timeliness of the filing of the Appeal, which would deprive the Board of jurisdiction over [the] case as an original claim. Id. (citing 38 U.S.C.A. § 7105 (d)(3)); see also Gonzalez-Morales v. Principi, 16 Vet. App. 556, 557 (2003) (holding that the failure to file a timely substantive appeal does not deprive the Board of jurisdiction as long as the RO does not close the appeal on that basis); see also 38 C.F.R. § 19.32 (agency of original jurisdiction may close the appeal without notice to an appellant or his or her representative for failure to respond to an SOC within the period allowed, and, if appellant files substantive appeal within the one-year period, the appeal will be reactivated).

More recently, the United States Court of Appeals for Veterans Claims (Court held that VA waives any objection to the timeliness of a substantive appeal by taking actions that would lead an appellant to believe that the appeal was perfected. Percy v. Shinseki, 23 Vet. App. 37, 46 (2009). In that decision, the Court stated that if VA treats an appeal as timely filed, the Veteran is entitled to expect that "VA means what it says." Id. at 47.

The essential facts in this matter are not in dispute. As noted above, the record indicates that, in a September 2005 rating decision, the RO granted service connection for PTSD and assigned a 10 percent rating, effective September 9, 2002. He was notified of this decision in a September 2005 letter. In May 2006, the Veteran filed a NOD, in which he expressed disagreement with both the assigned rating and the effective date of service connection.

In October 2006, the RO issued a SOC, which addressed the Veteran's claim of an increased rating for service-connected PTSD. The Veteran perfected a timely substantive appeal via a VA Form 9 (Appeal to Board of Veterans' Appeals) filed later in October 2006.

On December 22, 2006, the RO issued a SOC addressing the issue of entitlement to an earlier effective date for the grant of service connection for PTSD. The cover letter sent with the SOC clearly notified the Veteran that he was required to file a formal appeal to complete his appeal, and a VA Form 9 was enclosed for this purpose. This cover letter also specifically informed the Veteran that he had to file his appeal with the RO within 60 days from the date of the letter, or within the remainder, if any, of the one-year period from the date of the letter notifying him of the action that he had appealed. This letter went on to state that, in bold type, that if the RO did not hear from the Veteran within this period, his case would be closed. It also stated that, if the Veteran needed more time to file his appeal, he should request such time before the time limit for filing his appeal expired.

Pursuant to 38 C.F.R. § 20.302, the Veteran had until February 22, 2006 (or, 60 days from the date of mailing of the SOC), to file a substantive appeal. However, he did not file a substantive appeal as to the earlier effective date claim and, in fact, offered no argument as to the claim until the February 2008 Board hearing. Critically, the record includes no document filed by the Veteran with the RO that constitutes a timely-filed (i.e., filed by February 22, 2006) substantive appeal as to the issue addressed in the SOC, nor any document indicating a request for an extension of the 60-day period for filing a substantive appeal, prior to the expiration of the time limit for filing the substantive appeal. As such, no timely appeal as to this issue has been perfected. Under these circumstances, the Board must conclude that the Veteran has failed to timely perfect an appeal with respect to the claim addressed in the SOC issued on December 22, 2006.

Moreover, the Veteran has not offered any argument asserting that he timely perfected a substantive appeal as to the issue of an earlier effective date for service connection for PTSD. Neither the Veteran nor his attorney has identified any document that may constitute a timely-filed substantive appeal or a request for an extension.

Under these circumstances, the Board must conclude that the Veteran has failed to timely perfect an appeal with respect to the claim for which the substantive appeal was filed. As the law is dispositive of this claim, it must be denied for lack of legal merit. See Sabonis v. Brown, 6 Vet. App. 426, 430 (1994).


ORDER

A 30 percent rating for PTSD, from September 9, 2002 to April 24, 2006, , is granted, subject to the legal authority governing the payment of VA compensation.

A rating in excess of 30 percent for PTSD, from April 24, 2006 to August 21, 2007, is denied.

A rating in excess of 50 percent for PTSD ,from August 21, 2007 to May 24, 2013, is denied.

A 100 percent rating for neuropsychiatric impairment due to Parkinson's disease, to include and PTSD from May 24, 2013 to March 5, 2015, is granted, subject to the legal authority governing the payment of VA compensation.

As a substantive appeal with the September 2005 decision that assigned an effective date of September 9, 2002 for the award of service connection for PTSD was not timely filed, the appeal as to this matter is denied.


REMAND

The Board finds that further AOJ action on the matter of the Veteran's entitlement to a TDIU due to PTSD, to include on an extra-schedular basis, for the period from September 9, 2002 to May 24, 2013, is warranted.

As described above, the Board has construed the appeal as also encompassing the matter of the Veteran's entitlement to a TDIU due to the disability for which higher ratings are sought consistent with Rice, supra. Although a 100 percent rating is now in effect for service-connected neuropsychiatric impairment due to Parkinson's disease and PTSD from May 24, 2013, the issue of entitlement to a TDIU prior to May 24, 2013 remains on appeal. To this end, the Board notes that the Veteran's service-connected PTSD does not meet the percentage requirements for a schedular TDIU prior to May 24, 2013, as the assigned rating is less than 70 percent. See 38 C.F.R. § 4.16 (a) (2015).

In the May 2008 remand, the Board referred the issue of entitlement to a TDIU due to service-connected PTSD to the AOJ for initial adjudication of the claim. Unfortunately, the AOJ has yet to address this matter. However, as the Board has now expanded the appeal to include the matter of entitlement to a TDIU due to PTSD as a component of the claims involving evaluation of PTSD, to avoid any prejudice to the Veteran, the matter must be remanded for initial AOJ consideration. See Bernard v. Brown, 4 Vet. App. 384, 392-94 (1993).

Prior to undertaking action responsive to the above, to ensure that all due process requirements are met, and the record is complete, the AOJ should give the Veteran an opportunity to provide information and/or evidence pertinent the claim for a TDIU due to PTSD, to include on an extra-schedular basis, for the period, from September 9, 2002 to May 24, 2013. The letter to the Veteran should explain that he has a full one-year period for response. See 38 U.S.C.A. § 5103 (b)(1) (West 2014); but see 38 U.S.C.A. § 5103 (b)(3) (West 2014) (clarifying that VA may make a decision on a claim before the expiration of the one-year notice period).

Thereafter, the AOJ should obtain any additional evidence for which the Veteran provides sufficient information and, if necessary, authorization, following the procedures prescribed in 38 C.F.R. § 3.159.

The actions identified herein are consistent with the duties imposed by the VCAA. See 38 U.S.C.A. §§ 5103, 5103A; 38 C.F.R. § 3.159. However, identification of specific actions requested on remand does not relieve the AOJ of the responsibility to ensure full compliance with the VCAA and its implementing regulations. Hence, in addition to the actions requested above, the AOJ should also undertake any other development and/or notification action deemed warranted prior to adjudicating the remaining matter on appeal.

Accordingly, this matter is hereby REMANDED for the following action:

1. Send to the Veteran and his attorney a letter requesting that the Veteran provide sufficient information, and if necessary, authorization to obtain any additional evidence pertinent to the matter of his entitlement to a TDIU due to PTSD, to include on an extra-schedular basis, for the period from September 9, 2002 to May 24, 2013, that is not currently of record.

Clearly explain to the Veteran that he has a full one-year period to respond (although VA may decide the claim within the one-year period).

2. If the Veteran responds, assist him in obtaining any additional evidence identified, following the current procedures set forth in 38 C.F.R. § 3.159. All records and responses received should be associated with the claims file. If any records sought are not obtained, notify the Veteran of the records that were not obtained, explain the efforts taken to obtain them, and describe further action to be taken.

3. To help avoid future remand, ensure that all requested actions have been accomplished (to the extent possible) in compliance with this REMAND. If any action is not undertaken, or is taken in a deficient manner, appropriate corrective action should be undertaken. See Stegall v. West, 11 Vet. App. 268 (1998).

4. After accomplishing all requested action, as well as any additional action deemed warranted, adjudicate the matter of the Veteran's entitlement to a TDIU due to PTSD, to include on an extra-schedular basis, for the period from September 9, 2002 to May 24, 2013, in in light of all pertinent evidence and legal authority.

5. If the benefit sought on appeal remains denied, furnish to the Veteran and his attorney an SSOC that includes clear reasons and bases for all determinations, and afford them an appropriate time period for response.

The purpose of this REMAND is to afford due process and to accomplish additional development and adjudication; it is not the Board's intent to imply whether any benefit requested should be granted or denied. The Veteran need take no action until otherwise notified, but he may furnish additional evidence and/or argument during the appropriate time frame. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate 
action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



______________________________________________
JACQUELINE E. MONROE
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs